## THE PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, v. WILLIAM DANIELS, APPELLANT.

TERRITORIES.—LEGISLATIVE POWERS.—UNREASONABLE LAW.--The territories being mere dependencies of the United States, exercising delegated powers, and their governments being temporary agencies, the capacity of their legislatures is regarded more rigorously by the courts, and their enactments construed less liberally than the laws made by the sovereign, and they will be held void with less hesitation, when they are clearly unreasonable, oppressive and unjust.

ID.—ORGANIC ACT.—RIGHTFUL SUBJECT OF LEGISLATION.—Under the Organic Act providing that the legislative power of a territory shall extend to all rightful subjects of legislation, municipal charters and taxation, and boundaries of cities and villages, are rightful subjects of legislation, but the extent of the legislative discretion with respect to those subjects, though not expressly limited, must have a reasonable limit.

ID.--RIGHTFUL LEGISLATION.—MUNICIPAL TAXATION.—The rule applicable to municipal charters that where power is given to legislate but the mode of its exercise not prescribed, then the legislation in pursuance thereof must be a reasonable exercise of the power, is applicable to the acts of congress organizing the territories, and a law extending the limits of a city so as to include ranches, farms and unoccupied lands fifteen or twenty miles away would be unreasonable.

ID.—CONSTITUTIONAL LAW.—TAKING PROPERTY FOR PUBLIC.—The fifth amendment to the constitution of the United States, declaring that private property shall not be taken for public use with-

out just compensation should be applied to the appropriation of private property to public use in the form of money under the right of taxation, as well as the appropriation of real estate or other property to such use under the right of eminent domain.

CONSTITUTIONAL LAW.—MUNICIPAL TAXATION.—The United States issued under the "Town site act" a patent for 640 acres for Moroni City, to which tract the city is confined so far as indicated by buildings, streets or other improvements. The Utah legislature incorporated Moroni City with 16,000 acres of land within its corporate limits. Defendant owned a farm of 160 acres, included within the limits of the city as defined by the legislature, but two and a half miles from the town site or any improvements indicating a city. He had made his own road, and received no benefit from municipal taxation beyond any other farmer adjacent to a city. He was indicted for not returning a list of his property for municipal assessment; *held*, that his conviction must be reversed.

APPEAL from a judgment of conviction of the district court of the first district. The opinion states the facts.

*Messrs. Sutherland* and *McBride*, for the appellant.

*Mr. David Evans*, Assistant U. S. Attorney, for the respondent.

ZANE, C. J.:

The defendant was found guilty of a violation of section 2023 of the Compiled Laws of Utah, 1888, in not listing his property as required by the assessor of Moroni City. From the judgment imposing the fine he has appealed to this court, and assigns the entry thereof as error. The defendant was found guilty upon the following facts: The United States issued a patent to the mayor of Moroni City, under the "town site law," for 640 acres of land in San Pete county, Utah. To this tract the city is confined, so far as its extent is indicated by dwelling houses or other buildings, or by lots, streets, blocks, alleys, or other improvements. The territorial legislature, by a special act, included within the corporate limits of Moroni about twenty-five sections, making about 16,000 acres of land. The lands within these limits, outside of the 640 acres occupied as a "town site," are used for agricultural or

grazing purposes, or are not appropriated to any use. The defendant owns 160 acres included within the limits defined by the legislature, and resides upon and uses it as a farm. This farm is situated two and one-half miles from the "town site," or from any improvements indicating a city. The defendant has made a road to his house, and keeps it in repair without assistance from the corporation. His residence and his property are outside the circle of city improvements, and beyond the range of its police. The benefits to him are such as are common to neighboring residents outside of its limits who may come within it for business purposes. No school tax is involved in this case. That tax, so far as it is exacted in this territory, is collected by the school districts. In view of the facts the defendant denies that it was his duty to list his property for taxation by Moroni City. The question is, had the legislature the power to subject the defendant's property to taxation for the corporate purposes of Moroni City by thus extending its limits? In order to answer this question it is necessary to ascertain the limits of the legislative power with respect to the subject. Section 6 of the organic act is as follows: "The legislative power of said territory shall extend to all rightful subjects of legislation consistant with the constitution of the United States and the provisions of this act; but no law shall be passed interfering with the primary disposition of the soil, no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. All the laws passed by the legislative assembly and governor shall be submitted to the congress of the United States, and if disapproved shall be null and of no effect." The legislative power of the territory is limited in · express terms only by the term "rightful" and the phrase "consistent with the constitution of the United States," and as to the property of the United States and that of non-residents, and by the right of disapproval by congress. The legislature has the power to charter cities, to fix their boundaries, and to subject persons and property therein to taxation for corporate purposes; but the extent of that power

with respect to the subject is not defined in express terms. Of the *status* and rank of territorial governments the supreme court of the United States, in the case of *Snow* v. *U. S.*, 18 Wall., 317, said: "The government of the territories of the United States belongs primarily to congress, and secondarily to such agencies as congress may establish for that purpose. During the term of their pupilage as territories they are mere dependencies of the United States. Their people do not constitute a sovereign power. All political authority exercised therein is derived from the general government. It is, indeed, the practice of the government to invest these dependencies with a limited power of self-government as soon as they have sufficient population for that purpose. The extent of the power thus granted depends entirely upon the organic act of congress in each case, and is at all times subject to such alterations as congress may see fit to adopt." The territories being mere dependencies of the United States, exercising delegated powers, and their governments being temporary agencies employed by congress to aid in their government during the term of their pupilage, the capacity of their legislatures is regarded more rigorously by the courts, and their enactments construed less liberally than the laws made by a sovereign, and they will be held void with less hesitation when they are clearly unreasonable, oppressive, and unjust.

It is true that the government of the United States is also a government of delegated powers; but it is a sovereignty; it is the embodiment of the power of the American people in its highest dignity and greatest force; its framers intended to confer upon it sufficient authority to protect rights and enforce duties, private or public, domestic or foreign, so far as might be necessary for the general government to do so. They designed it to stand amid all conditions and in every emergency, against everything human, reserving the right to change it according to the methods indicated in its constitution. When such a government expresses its intentions in law, the courts will construe them liberally in order to give full effect to them. So with the states, for sovereignty is exercised partly through the

national and partly through the state governmets. It resides in the people, and they use it through the general government as an agency so far as deemed necessary for national purposes. The remainder they use through state governments so far as deemed necessary for state purposes. It follows that a law of congress, in harmony with the constitution of the United States, is superior to all others within its jurisdiction, and that a statute of a state, in harmony with the constitution of the United States and of the state, is superior to all others within its jurisdiction. Whether the law be of congress or of a state it is the will of the sovereign, and therefore superior to every other. Such governments rank all others, and from the discretion of their law-makers there can be no appeal; there can be no tribunal of superior or equal authority found. On the contrary, a territorial government is an agency employed by congress to aid in governing the people of the territory in the same way as a municipal government is employed by the legislature of a state to aid in the government of the population of a city. The supreme court further said of them, in the case of *Bank* v. *Yankton,* 101 U. S., 129: "All territory within the jurisdiction of the United States not included in any state must necessarily be governed by or under the authority of congress. The territories are but political subdivisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective states, and congress may legislate for them as a state does for its municipal organizations." In the organic act, congress, under restrictions, express or implied, confers upon the territorial legislature authority to legislate with respect to such subjects as concern the people of the territory. When the authority with respect to the subject is specific, and its extent is clearly defined, the discretion of the legislature within constitutional limitations cannot be questioned; the denial of such discretion would be a denial of the power of congress; but when the power is given in general terms, and the extent to which it may be exercised upon the subject is not expressly limited and clearly defined in the organic

act, then the territorial legislature must exercise its discretion. So far as that discretion is expressly limited by the constitution or the organic act such limitation must be observed; but when it is not, the legislature must follow the dictates of reason and justice. The law must be reasonable and just, because the court will not presume that congress intended to authorize the legislature to make an unjust, an unreasonable, an unequal, or an oppressive, law. The subjects to which the power of the territorial legislature extends are not specifically described, and their number is limited by the word "rightful." A law upon a subject not of that number would be held void. In that case the court would determine that the subject was not within the power of the legislature; and as to the extent to which the legislature may act on a rightful subject, when the limit is not expressly fixed, the court must ascertain the limit and determine whether the law is within it. To illustrate: The institution of marriage is a rightful subject of legislation, and qualifications for marriage may be required by the legislature. But a law fixing the matrimonial standard above human nature, and thereby preventing the actual existence of the institution, would be held by the courts of no effect; or a law subjecting persons wishing to marry to such physical, intellectual, or moral tests that no more than one out of a hundred could pass them, would also be held void. Divorce is also a rightful subject of legislation, but a law giving any married person who might apply to the court a right to a divorce without cause would be invalid. Municipal charters, the boundaries of cities and villages, and municipal taxation, are rightful subjects of legislation, but the extent of the legislative discretion with respect to those subjects is not expressly limited, there must be a reasonable limit, however, to that discretion. A law providing that the revenue necessary for general purposes should all be raised from the residents and property in one part of the city, or that the rate of taxation for such purposes should be higher on persons and property so situated, would be void, because the burden would be unequal, and in all probability oppressive. And so a law

extending the limits of a city a great distance beyond its improvements, so as take in ranches, farms and unoccupied lands, 15 or 20 miles away, would be so unreasonable and unfair that a court would be compelled to hold it void. The territorial law must confine the district to be taxed for municipal purposes to the limits indicated by the buildings or public improvements of the city, and such outside district as is so near that it is probable that the protection of the police will be extended to it, or that the benefits of the improvements made with municipal taxes will be received by its residents and property, or the discretion of the legislature with respect to the subject is unlimited by the organic act. The territorial legislature, being an agency employed by congress to aid in the government of the territory, and to that end authorized to exercise the powers delegated by the organic act, can exercise no others. Because the limit beyond which the power delegated to any subject may not go is not expressly defined, it does not follow that there is none, and that the power is arbitrary. In interpreting or construing the language conveying authority to the legislature, the court will not assume that congress intended to authorize its agent to oppress a portion of the people by unjust, inequitable, and unequal laws, and to disregard the fundamental principles upon which all just taxation must stand. Although the discretion of the legislature may not be expressly limited as to all subjects, it is by implication and by reason.

In construing the provisions of the organic act in question, conferring power on the legislature, we are disposed to apply the rules of construction applicable to similar provisions in municipal charters. "Where the legislature, in terms, confers upon a municipal corporation the power to pass ordinances of a specified and defined character, if the power thus delegated be not in conflict with the constitution, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if. it had been passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature

distinctly says may be done cannot be set aside by the courts because they may deem it unreasonable or against sound policy. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid." 1 Dill. Mun. Corp. (2d Ed.), Sec. 262. In the case of *Corrigan* v. *Gage*, 68 Mo., 541, the court said: "Speaking in general terms, the authorities of a city may be said to have a large discretion as to the necessity or expediency of the ordinances which they adopt; but their powers in this regard are by no means omnipotent, otherwise the citizens would be without remedy or redress. Those powers must be exercised within the bounds of reason and apparent necessity; they must not impose a burden without a benefit, and the reasonableness of their exercise is a fit subject for inquiry. This principle has been expressly recognized by this court, Judge Bliss saying: 'That corporations have none of the elements of sovereignty; that they cannot go beyond the powers granted them; and that they must exercise such granted powers in a reasonable manner—are propositions that cannot be disputed.' *City of St. Louis* v. *Weber*, 44 Mo., 547." This doctrine is one of general recognition. In the case of *Washington Ave.*, 69 Pa. St., 352, the court, in holding a law of that state, compelling the owners of farm lands lying within one mile on each side of a public highway to pay for grading, macadamizing, and improving it by an assessment upon their lands by the acre, void, observed: "I admit that the power to tax is unbounded by any express limit in the constitution—that it may be exercised to the full extent of the public exigency. I concede that it differs from the power of eminent domain, and has no thought of compensation by way of a return for that which it takes and applies to the public good further than all derive benefit from the purpose to which it is applied. But, nevertheless, taxation is bounded in its exercise by its own nature, essential characteristics, and purpose. It must therefore visit all alike in a reasonably practicable way, of which the legislature may judge,

but within the just limits of what is taxation.     *     *     *
It must be public in its purpose, and reasonably just and
equal in its distribution, and cannot sacrifice individual
right by a palpably unjust exaction." In the case of
*Hammett* v. *Philadelphia*, 65 Pa. St., 146, the court said:
"In truth it matters not whether an assessment upon an
individual or a class of individuals for a general and not a
mere local purpose be regarded as an act of confiscation, a
judicial sentence or rescript, or a taking of private prop-
erty for public use without compensation. In any aspect
it transcends the power of the legislature, and is void. I
regard it as a forced contribution.     *     *     *     It is the
solemn duty of our judiciary under our constitution to
guard and protect this right of property, as well from in-
direct attacks under any specious pretext as from open and
palpable invasion." Although the power of the territorial
legislature to extend municipal boundaries for the pur-
poses of taxation is not expressly limited in the organic
act, in view of the fundamental principles upon which all
just taxation proceeds, and of authority, we hold that the
power is not arbitrary. "Taxation is the equivalent for
the protection which the government affords to the person
and property of its citizens, and as all are alike protected,
so all alike should bear the burden in proportion to the
interest secured." Cooley, Const. Lim. (4th Ed.), 617.
Upon principle and authority we are of the opinion:
*First*, that municipal taxation should be limited to the
range of municipal benefits; *second*, that lands and their
occupants without the range of municipal benefits should
not be taxed to aid those within; *third*, that a law author-
izing the assessment of taxes for municipal purposes upon
lands or their occupants located beyond the range of
municipal benefits is not a rightful subject of legislation;
*fourth*, that taxation for city purposes should be within
the bounds indicated by its buildings, or its streets and
alleys, or other public improvements, and contiguous or
adjacent districts so situated as to authorize a reasonable
expectation that they will be benefited by the improve-
ments of the city or protected by its police; that no out-
side districts should be included when it is apparent and

palpable that the benefits of the city to it will only be such as will be received by other districts not included, such as will be common to all neighboring communities.

The defendant also relies upon the fifth amendment to the Constitution of the United States, declaring that private property shall not "be taken for public use without just compensation." This has been held to be a restriction upon the power of congress, and not upon the States. But the territory being an agency of congress, the restriction applies to this legislature. We will now consider the provision as applicable to the facts of this case. Some courts have held that it has reference only to the appropriation of private property under the right of eminent domain; others have given to it greater significance and a broader effect, and have applied it also to the appropriation to public use of private property in the form of money by the methods of taxation. The government may appropriate the property of the individual when necessary in one of three ways: *First*, by taking in the mode prescribed after paying the owner for it; *second*, by estimating the benefits to the owner's property from the improvements to be made, and taking the amount estimated in money; *third*, by taking the property in the form of money by the methods of taxation for which the benefits of protection and other advantages are furnished by the government. The same principle underlies all these methods. When the property is taken under the right of eminent domain, the public pays the owner in money; when money is exacted by means of a special assessment, the owners are compensated in special benefits to their property by public improvements made in its expenditure; and when money is exacted by a general tax, the payer is compensated in the benefits received from the government in any and all of the ways that a government may benefit society. Thus the individual is compensated for the property he parts with, whether it consists of lands or money or other property. Effect may be given to a law according to the letter in which it is couched, or it may be construed in the light of the conditions in which it is to be applied, and be made to affect everything within reach of its just implications.

In such broader sense it may be applied. It is a rule of construction that constitutional provisions designed to protect the rights of life, liberty and property should be liberally construed in the light and in furtherance of their purpose. It would appear more reasonable to interpret the expression "private property" in the provision in question as meaning all kinds of private property, and the word "taken" as embracing the appropriation by any method, and the phrase "just compensation" as including any appropriate compensation, whether in money or benefits, providing the compensation is a just one—a fair equivalent for the property parted with. It would be equally as just to the owner for the government to assess $100 against his land and to take it and to give him in return that amount in value in the benefits of government, as it would be for it to take an acre of his land worth $100 and to give him in return that amount in money. The difference to the owner would be only in the quality of the property taken and in the quality of the consideration, not in the value of the property taken or in the value of the consideration received. The benefits of the city government to persons and to property within their range in the protection it gives, from the improvement it makes, and from the conveniences and advantages it furnishes, are regarded as a just compensation for all taxes paid. The fifth amendment to the constitution, fairly construed in the light of its purpose, forbids the appropriation of private property to public use without just compensation, whether the property consists of lands or money or something else; whether the appropriation is made according to the methods adopted under the right of eminent domain or under special assessments or general taxation ; whether the person from whom the exaction is made is compensated in money or in the benefit of government—in the protection it affords, in the public improvements it makes, and in the conveniences, the privileges and the advantages it furnishes.

In the case of *People* v. *Mayor*, etc., 4 N. Y. 420, the court said: "The right of taxation and the right of eminent domain rest substantially on the same foundation.

Compensation is made when private property is taken in either way. Money is property; taxation takes it for public use; and the taxpayer receives, or is supposed to receive, his just compensation in the protection which government affords to his life, liberty and property, and in the increase of the value of his possessions by the use to which the government applies the money raised by the .tax. When private property is taken by right of eminent domain, special compensation is made, for the reason hereafter stated." And Judge Cooley says: "Taxation and eminent domain, indeed, rest substantially on the same foundation, as each implies the taking of private property for public use on compensation made; but the compensation is different in the two cases. When taxation takes money for the public use, the taxpayer receives, or is supposed to receive, his just compensation in the protection which government affords to his life, liberty and property, and in the increase in the value of his possessions by the use to which the government applies the money raised by the tax, and either of these benefits will support the burden." Cooley, Const. Lim. (4th Ed.) 620. These two authorities are to the effect that, when the taking is by taxation, compensation is always implied; that the taxpayer is supposed to receive just compensation in the use to which the money is appropriated; and that such benefits will support the burden. This is equivalent to saying that if the tax is not supported by such benefits or consideration it must fall. If the taxpayer and his property are so situated with respect to the government that it is palpable and clear that the use to which taxes collected are applied will not benefit him, then there is not compensation to support the tax. But they also say that the constitutional provision in question has reference to the taking of private property for public use under the right of eminent domain. They concede, however, that taxation and eminent domain rest on the same foundation—the principle of compensation—and that such compensation in case of taxation is in benefits. The constitutional provision in question was designed doubtless to give effect to that principle; but if the provision simply forbids the taking of. private property for

public use without just compensation under the right of
eminent domain, then its authors made the constitutional
rule narrower than the principle upon which they intended
to base it, because the principle requires compensation in
all cases, whether real estate, money, or any other kind of
property is involved; whether it is taken by the methods
adopted under the right of eminent domain, or under the
right of taxation, or by any other means. The principle
lies deeper than mere forms or methods. It would be un-
reasonable to say that the authors of the provision in ques-
tion intended to forbid the taking under one right without
just compensation, and intended to allow such appropria-
tion under another right; that they intentionally closed
one gap, but intentionally left another down by which the
same wrong in effect could be accomplished. We are of
the opinion that the constitutional provision considered
should be applied to the appropriation of private property
to public use in the form of money under the right of tax-
ation as well as the appropriation of real estate or other
property to such use under the right of eminent domain.
This conclusion finds support in the following cases:
*Bradshaw* v. *Omaha*, 1 Neb. 16; *Cheaney* v. *Hooser*, 9 B.
Mon. 330; *Wells* v. *Weston*, 22 Mo. 385; *Covington* v.
*Southgate*, 15 B. Mon. 491; *Sharp's Ex'r* v. *Dunavan*, 17
B. Mon. 223; *Arbegust* v. *Louisville*, 2 Bush, 271; *Swift* v.
*Newport*, 7 Bush, 37; *Morford* v. *Unger*, 8 Iowa, 82; *Lang-
worthy* v. *Dubuque*, 13 Iowa, 86; *Fulton* v. *Davenport*, 17
Iowa, 404; *Buell* v. *Ball*, 20 Iowa, 282; *Deeds* v. *Sanborn*, .
26 Iowa, 419; *Deiman* v. *Fort Madison*, 30 Iowa, 542. We
do not regard *Kelly* v. *Pittsburgh*, 85 Pa. St. 170, an anal-
ogous to this case. It came under review in the supreme
court of the United States. 104 U. S. 78. The question
considered by the latter court was whether the annexation
and consequent taxation involved in the case deprived the
party of his property without due process of law within the
meaning of the fourteenth amendment. That amendment
is a restriction on the state governments, and was there-
fore considered; but the provision prohibiting the taking
of private property for public use without just compensa-
tion is not found in the fourteenth amendment, but it is

contained in the fifth amendment, which is a restriction on the federal government, and therefore it was not considered by the court. Inasmuch as it appears from the record in the case that the defendant resides and that his lands are situated outside of Moroni city, as indicated by public or private improvements, and beyond such contiguous or adjacent district as will be benefited by its municipal expenditure, the court holds that the territorial legislature had no power to subject his property to the burden of taxation for the corporate purposes of the city. The judgment of the court below is reversed, and the cause is remanded.

Anderson, J., concurred.