# SOUTH CAROLINA *v.* SEYMOUR.

ERROR TO THE COURT ·OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 1140. Submitted April 9, 1894. — Decided May 14, 1894.

On a writ of mandamus in behalf of a State to the Commissioner of Patents to register, under the act of March 3, 1881, c. 138, a trade-mark used by the State on intoxicating liquors in commerce with a foreign nation, and which the Commissioner of Patents has refused to register, on the ground that the State by its own laws had no authorized trade in liquors outside of its limits, the validity of an authority exercised under the United States is not drawn in question; and therefore, in the absence of evidence of the value of the registration, a judgment of the Court of Appeals of the District of Columbia, denying the writ of mandamus, cannot be reviewed by this court on writ of error, under the act of February 9, 1893, c. 74, § 8.

THIS was a motion to dismiss for want of jurisdiction a writ of error to review a judgment of the Court of Appeals of the District of Columbia, denying a writ of mandamus to the Commissioner of Patents to register a trade-mark under the act of March 3, 1881, c. 138. 21 Stat. 502. The case is stated in the opinion.

*Mr. John I. Hall* and *Mr. Levin H. Campbell* for the motion.

*Mr. John Altheus Johnson* opposing.

MR. JUSTICE GRAY delivered the opinion of the court.

The earliest legislation of Congress for the registration and protection of trade-marks was contained in the Patent Act of 1870, and substantially reënacted in the Revised Statutes. Act of July 8, 1870, c. 230, §§ 77–84; 16 Stat. 210–212; Rev. Stat. §§ 4937–4947. That legislation, as well as the act of August 14, 1876, c. 274, (19 Stat. 141,) for punishing the counterfeiting of trade-marks, was held by this court at October term, 1879, to be unconstitutional and void, because not lim-

ited to trade-marks used in commerce with foreign nations, or among the several States, or with the Indian tribes. *Trade-Mark Cases*, 100 U. S. 82.

Congress afterwards passed an act limited to the registration and protection of trade-marks " used in commerce with foreign nations or with the Indian tribes," and whose owners were " domiciled in the United States, or located in any foreign country or tribes which by treaty, convention or law, affords similar privileges to citizens of the United States." Act of March 3, 1881, c. 138 ; 21 Stat. 502.

Sections 1 and 2 of that act provide that such owners may obtain registration of such trade-marks by ".causing to be recorded in the Patent Office a statement specifying name, domicil, location and citizenship of the party applying ; the class of merchandise and the particular description of goods comprised in such class to which the particular trade-mark has been appropriated; a description of the trade-mark itself, with facsimiles thereof, and a statement of the mode in which the same is applied and affixed to goods, and the length of time during which the trade-mark has been used ;" " paying into the Treasury of the United States the sum of twenty-five dollars, and complying with such regulations as may be prescribed by the Commissioner of Patents ;" and " accompanied by a written declaration verified by the person, or by a member of a firm, or by an officer of a corporation applying, to the effect that such party has at the time a right to the use of the trade-mark sought to be registered, and that no other person, firm or corporation has the right to such use, either in the identical form or in any such near resemblance thereto as might be calculated to deceive ; that such trade-mark is used in commerce with foreign nations or Indian tribes, as above indicated ; and that the description and facsimiles presented for registry truly represent the trade-mark sought to be registered."

By section 3, " no alleged trade-mark shall be registered, unless the same appear to be lawfully used as such by the applicant in foreign commerce or commerce with Indian tribes, as above mentioned, or is within the provision of a treaty,

convention or declaration with a foreign power; nor which is merely the name of the applicant; nor which is identical with a registered or known trade-mark of another and appropriate to the same class of merchandise, or which so nearly resembles some other person's lawful trade-mark as to be likely to cause confusion or mistake in the public or to deceive purchasers."

This section further provides that " in an application for registration the Commissioner of Patents shall decide the presumptive lawfulness of claim to the alleged trade-mark; and in any dispute between an applicant and a previous registrant, or between applicants, he shall follow, so far as the same may be applicable, the practice of courts of equity of the United States in analogous cases."

The act provides for no direct judicial review, by appeal or otherwise, of the decision of the Commissioner of Patents upon the question of registration. But section 7 provides that " registration of a trade-mark shall be *prima facie* evidence of ownership;" that any person, reproducing, counterfeiting, copying, or colorably imitating and affixing to similar goods, a registered trade-mark, shall be liable to an action at law for damages, or a suit in equity for an injunction; and that the courts of the United States shall have original and appellate jurisdiction in such cases, without regard to the amount in controversy.

On December 24, 1892, the general assembly of South Carolina passed an act, prohibiting the manufacture or sale of intoxicating liquors within the State, except as therein provided; directing the appointment of a commissioner who should, under the rules and regulations of a state board of control, consisting of the Governor, the comptroller general and the attorney general, "purchase all intoxicating liquors for lawful sale in this State," and sell to county dispensers no liquors unless "tested by the chemist of the South Carolina college and declared to be pure and unadulterated;" that county dispensers should " alone be authorized to sell and dispense intoxicating liquors;" that manufacturers of intoxicating liquors doing business in the State should " be allowed to

sell to no person in this State, except to the state commissioners and to parties outside of the State; " and that every package of intoxicating liquors, sold in the State, or shipped beyond the limits of the State, should have thereon a certificate of the commissioner. South Carolina Acts of 1892, c. 28, pp. 62, 63, 65.

On July 15, 1893, the State of South Carolina, by its Governor, paid into the Treasury of the United States the sum of twenty-five dollars, and filed with the Commissioner of Patents, in conformity with the provisions of the act of Congress of 1881, and with the regulations prescribed by the Commissioner of Patents, a statement and declaration, which began by stating that "the State of South Carolina, one of the Commonwealths composing the United States of America, possessed in this regard of the full rights of a corporation, and doing business at its capital city of Columbia, in the county of Richland, State aforesaid, has adopted for its use a trade-mark for chemically pure distilled liquors," consisting of the word "Palmetto," and particularly described; was accompanied by facsimiles of the trade-mark; and was supported by a declaration on oath of the Governor that he verily believed "that the foregoing statement is true; that the said State at this time has a right to the use of the trade-mark therein described; that no other person or firm or corporation has the right to such use, either in the identical form, or in any such near resemblance thereto as might be calculated to deceive; that the said trade-mark is used by the said State in commerce with foreign nations or Indian tribes, and particularly with Canada; and that the description and facsimiles presented for record truly represent the trade-mark sought to be registered."

At the hearing before the Commissioner of Patents, it appeared that the trade-mark had been adopted by the state board of control, and that the State had sold in Canada a case of liquors with this trade-mark.

The Commissioner of Patents refused registration of the trade-mark, upon the ground that the State of South Carolina, by its own laws, had no authorized trade in distilled liquors

outside of its own limits, was not the owner of any trade-mark, and had not the right to the use of the trade-mark sought to be registered.

The State of South Carolina, by its attorney general, thereupon presented to the Supreme Court of the District of Columbia a petition for a writ of mandamus to the Commissioner of Patents to register the trade-mark. That court held that upon the facts proved the duties of the Commissioner of Patents in regard to registration of trade-marks were merely ministerial, and that the writ of mandamus should issue. The Commissioner of Patents appealed to the Court of Appeals of the District of Columbia, which held that those duties were not ministerial, but required the exercise of judgment and discretion by the Commissioner, and therefore reversed the judgment and dismissed the petition.

The petitioner sued out this writ of error, and the defendant in error now moves to dismiss it for want of jurisdiction.

By section 8 of the act of February 9, 1893, c. 74, establishing a Court of Appeals for the District of Columbia, as in the previous act of March 3, 1885, c. 355, regulating appeals from the Supreme Court of the District and the Supreme Courts of the Territories, no case can be brought to this court by appeal or writ of error, unless either " the matter in dispute, exclusive of costs, shall exceed the sum of $5000," or else, without regard to the sum or value in dispute, it is a case " wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States." 27 Stat. 434; 23 Stat. 443.

In order to bring a case within the first alternative, the matter in dispute, according to the settled construction, must be money, or some right the value of which can be estimated and ascertained in money, and which appears by the record to be of the requisite pecuniary value. *Columbian Ins. Co.* v. *Wheelright,* 7 Wheat. 534; *Kurtz* v. *Moffitt,* 115 U. S. 487; *Street* v. *Ferry,* 119 U. S. 385; *Smith* v. *Adams,* 130 U. S. 167, 176; *Cross* v. *Burke,* 146 U. S. 82, 88; *Washington & Georgetown Railroad* v. *District of Columbia,* 146 U. S. 227; *Cam-*

*eron* v. *United States*, 146 U. S. 533, 535, and 148 U. S. 301, 303. In *Sparrow* v. *Strong*, 3 Wall. 97, cited by the plaintiff in error, there was an affidavit, uncontradicted by anything in the record, that the mining claim in dispute was of the requisite pecuniary value. In *Columbian Ins. Co.* v. *Wheelright*, above cited, this court quashed a writ of error to review a judgment upon a writ of mandamus to admit to an office, the salary of which was not shown to be of the pecuniary value required to support the jurisdiction of this court. See also *United States* v. *Addison*, 22 How. 174; *Smith* v. *Whitney*, 116 U. S. 167, 173; *United States* v. *Wanamaker*, 147 U. S. 149.

The matter in dispute in this case is not the right to the trade-mark, but the right to have it registered; the registration is only *prima facie* evidence of ownership; and if the value of the registration is susceptible of an estimate in money, there is no evidence whatever in the record tending to show this value.

It is not, and could not be, pretended that in this case there was "involved the validity of any patent or copyright;" and, in the light of previous decisions of this court, it is quite clear that there was not "drawn in question the validity of a treaty or statute of or an authority exercised under the United States."

In order to come within this clause, the validity, and not the construction only, of a treaty or statute of the United States, or of an authority exercised under the United States, must be directly drawn in question.

In *Snow* v. *United States*, 118 U. S. 346, 353, in which it was contended that a court established by act of Congress, and admitted to have a lawful existence, and jurisdiction of the case, misconstrued the act and went beyond the authority which it conferred, it was held that all that was drawn in question was whether there was or was not error in the administration of the statute, and not "the validity of an authority exercised under the United States," within the meaning of the act of March 3, 1885, c. 355.

In *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, which also arose under that act, the question in contro-

versy was whether a railroad corporation authorized by acts of Congress to establish freight stations, and to lay as many tracks " as its president and board of directors might deem necessary," in the District of Columbia, had the right to occupy a public street for the purposes of a freight yard. It was argued that the validity of an authority, exercised under the United States, to so occupy the public streets was drawn in question. But this court held that only the construction of the acts of Congress, and the extent of the authority claimed under them, and not the validity, either of the statutes, or of the authority, was drawn in question; or, in other words, it was " a case which depends only on a judicial construction of an act of Congress, there being no denial of the power of Congress to pass the act, or of the right to enjoy whatever privileges are granted by it." *Clough* v. *Curtis,* 134 U. S. 361, 370.

In *District of Columbia* v. *Gannon,* 130 U. S. 227, it was held that the validity of the authority of the Commissioners of the District was not drawn in question by contesting the liability of the District in damages for the negligence of the Commissioners in failing to keep the streets in repair.

In *United States* v. *Lynch,* 137 U. S. 280, in which the court below had denied a writ of mandamus to compel accounting officers of the Treasury to allow a claim for mileage, it was contended that under the acts of Congress, and the construction given them by a previous decision of this court, the duty of the accounting officers " was merely ministerial, and that by the disallowance of the relator's claim for mileage these officers exercised a discretion which they did not possess; that this was an invalid exercise of an authority under the United States; and that hence the validity of the authority was drawn in question." To which this court, speaking by the Chief Justice, answered: " In order to justify this position, however, the validity of the authority must have been drawn in question directly and not incidentally. The validity of a statute is not drawn in question every time rights claimed under such statute are controverted; nor is the validity of an authority, every time an act done by such

authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry." The court accordingly held that the authority of the accounting officers of the Treasury was not thus denied, nor the validity of that authority questioned; but that it was only contended that in the exercise of a valid authority those officers erred in respect to the allowance, in view of the decision of this court in another case; that if the judgment should be reversed upon the ground urged, it would not be for want of power in these officers to audit and pass upon the account, but because they had disallowed what they ought to have allowed, and erroneously construed what needed no construction; and that this would not in any degree involve the validity of their authority: 137 U. S. 285, 286.

In the present case, no objection to the validity of the act of Congress under which the Commissioner of Patents acted was made, either at the hearings in the Patent Office and in the courts of the District of Columbia, or in the briefs filed by counsel in this court. Nor was the existence or the lawfulness of the authority conferred by that act upon the Commissioner of Patents drawn in question. But from the beginning to the end of the proceedings the only controversy was as to the construction of the act of Congress, and consequently as to the nature and extent of the Commissioner's authority. Neither the question whether the Commissioner rightly decided upon the presumptive lawfulness of the right of the State of South Carolina to the trade-mark sought to be registered, nor the question whether the Commissioner's duty was of such a character that a writ of mandamus would lie to compel its performance, involved a question of the validity of the authority exercised by him under the United States.

*Writ of error dismissed for want of jurisdiction.*