# LINFORD *v.* ELLISON.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 90. Submitted November 22, 1894. — Decided December 17, 1894.

A judgment of the Supreme Court of the Territory of Utah against the tax collector of a municipal corporation for fifty dollars, the value of property levied on by him for unpaid municipal taxes, rendered on the ground that a municipal corporation, which is a small village but has extensive limits, cannot tax farming lands for municipal purposes lying within the corporate limits but outside of the platted portion of the city and so far removed from the settled portion thereof that the owner would receive no benefits from the municipal government, does not draw in question the validity of the organic law of the Territory or the scope of the authority to legislate conferred upon the territorial legislature by Congress; and as the matter in dispute, exclusive of costs, does not exceed the sum of five thousand dollars, nor involve the validity of a patent, or copyright, or of a treaty, this court is without jurisdiction to review it.

THIS was an action brought by Ephraim P. Ellison in the District Court of the Third Judicial District of the Territory of Utah against James H. Linford, Jr., to recover damages for the conversion of a wagon belonging to plaintiff, which had been levied on by defendant, as tax collector of the city of Kaysville, for unpaid municipal taxes. A jury was waived, and the cause submitted to the court for trial upon an agreed statement of facts. The court held the taxes invalid, and gave judgment in favor of plaintiff for $50 and costs. Defendant prosecuted an appeal to the Supreme Court of the Terri-

tory, which affirmed the judgment, and defendant appealed to this court. The Supreme Court of the Territory filed the following findings of fact:

"First. That the defendant, James H. Linford, Jr., was the legal and acting collector of taxes for the city of Kaysville at the time of the transaction out of which this action arose.

"Second. That the city of Kaysville was a duly and legally organized municipal corporation under the laws of the Territory of Utah, and in pursuance of ordinances duly passed assessed and levied a regular municipal tax for city purposes upon all the premises and property within its corporate limits.

"That, the tax levied upon the property of plaintiff not being paid and having become delinquent, the defendant, in pursuance of authority conferred by the ordinances of the city, levied upon a wagon belonging to the plaintiff of the value of fifty dollars and sold it to satisfy said taxes.

"Third. That the map or plat of the city of Kaysville, which was a part of the record and marked 'Exhibit 1,' correctly shows the boundaries of the city and the location of the several tracts of plaintiff's land and of his store with reference to the platted and settled portion of the said city, and that the portion of the city which is platted into lots and blocks and marked 'city lots,' as shown on said map, correctly shows the thickly settled portions of said city and the only part thereof which is laid off into blocks and lots with streets and alleys.

"Fourth. That plaintiff owns the three tracts of land where his name appears on the map, and that they are agricultural lands, used for farming purposes only, and on which he resides, and that he also owns a store at the point indicated by the letters 'F. U.' and 'E. P. E.' at a little place called Layton; that one of said tracts of land is situated a little over half a mile from the nearest part of the platted portion of the city. The second tract is situated about one mile and the third tract about two miles from the platted portion of the city while the store is situated about two miles away, at a little place called Layton, on a county road leading to the city proper, and also on the line of the Utah Central Railroad.

"Fifth. That the city of Kaysville was incorporated by

an act of the legislative assembly of Utah Territory passed March 15th, 1868, and contains about six hundred inhabitants in the platted portion thereof, and that it contains within its corporate limits more than twenty-three square miles.

" Sixth. It is not shown that the platted and settled portion of the city or what may be termed the city proper is likely to be extended in the direction of plaintiff's premises, nor that any streets, driveways, or other improvements in that direction are contemplated or are likely to be made, nor that the plaintiff will receive any benefit from the expenditures of the taxes for city purposes."

The cause was submitted on the merits and on a motion to dismiss.

*Mr. Jabez G. Sutherland* and *Mr. Arthur Brown* for the motion to dismiss.

*Mr. J. L. Rawlins* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

By the sixth section of the act establishing a territorial government for Utah, it was enacted " that the legislative power of said Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act; but no law shall be passed interfering with the primary disposal of the soil ; no tax shall be imposed upon the property of the United States; nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents. All the laws passed by the legislative assembly and governor shall be submitted to the Congress of the United States, and, if disapproved, shall be null and of no effect." Act of September 9, 1850, c. 51, 9 Stat. 453.

The seventh section of the charter of Kaysville provided: " The city council shall have authority to levy and collect taxes, for city purposes, upon all taxable property real and

personal, within the limits of the city, not exceeding one-half of one per cent per annum upon the assessed value thereof; and may enforce the payment of the same to be provided for by ordinance, not repugnant to the Constitution of the United States or to the laws of this Territory." 1 Comp. Laws Utah, 1888, 427, 429.

In *People* v. *Daniels*, 6 Utah, 288, 292, 296, the Supreme Court had under consideration certain taxes imposed upon Daniels by a municipal corporation named Moroni City, the seventh section of whose charter was identical with that of Kaysville, and the question in respect to the legality of the taxation the same as in the case at bar. The Supreme Court of Utah held that the taxation in question could not be sustained, and, among other things, said: " In the organic act Congress, under restrictions, express or implied, confers upon the territorial legislature authority to legislate with respect to such subjects as concern the people of the Territory. When the authority with respect to the subject is specific, and its extent is clearly defined, the discretion of the legislature within constitutional limitations cannot be questioned; the denial of such discretion would be a denial of the power of Congress; but when the power is given in general terms, and the extent to which it may be exercised upon the subject is not expressly limited and clearly defined in the organic act, then the territorial legislature must exercise its discretion. So far as that discretion is expressly limited by the Constitution or the organic act such limitation must be observed; but when it is not, the legislature must follow the dictates of reason and justice. The law must be reasonable and just, because the court will not presume that Congress intended to authorize the legislature to make an unjust, an unreasonable, an unequal, or an oppressive law. The subjects to which the power of the territorial legislature extends are not specifically described, and their number is limited by the word ' rightful.' A law upon a subject not of that number would be held void. In that case the court would determine that the subject was not within the power of the legislature; and as to the extent to which the legislature may act on a rightful subject, when the

limit is not expressly fixed, the court must ascertain the limit and determine whether the law is within it. . . . Municipal charters, boundaries of cities and villages, and municipal taxation, are rightful subjects of legislation, but the extent of the legislative discretion with respect to those subjects is not expressly limited ; there must be a reasonable limit, however, to that discretion." The court applied to the provisions of the organic act in question, conferring power on the legislature, the rule of construction applicable to similar provisions in municipal charters, as laid down in Dillon on Municipal Corporations, (4th ed., § 328,) namely, that what the legislature distinctly says may be done cannot be set aside by the courts because they may deem it to be unreasonable or against sound policy, but where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then an ordinance passed in pursuance thereof must be a reasonable exercise of the power or it will be pronounced invalid. And upon principle and authority the court was of opinion : "*First*, that municipal taxation should be limited to the range of municipal benefits ; *second*, that lands and their occupants without the range of municipal benefits should not be taxed to aid those within ; *third*, that a law authorizing the assessment of taxes for municipal purposes upon lands or their occupants located beyond the range of municipal benefits is not a rightful subject of legislation ; *fourth*, that taxation for city purposes should be within the bounds indicated by its buildings, or its streets and alleys, or other public improvements, and contiguous or adjacent districts so situated as to authorize a reasonable expectation that they will be benefited by the improvements of the city or protected by its police ; that no outside districts should be included when it is apparent and palpable that the benefits of the city to it will only be such as will be received by other districts not included, such as will be common to all neighboring communities."

In the case at bar, (7 Utah, 166,) the Supreme Court declared that it had no reason to doubt the correctness of the former decision, and affirmed the judgment of the District

Court. And, in accordance with the view that such taxation was not within the power granted, it was ruled that "a municipal corporation, which is a small village, but having extensive limits, cannot tax farming lands for municipal purposes, lying within the corporate limits but outside of the platted portion of the city, and so far removed from the settled portion of the city that the owner will receive no benefits from the municipal government."

It is thus seen that the decision of the Supreme Court of the territory involved the construction of the organic law and the scope of the authority to legislate conferred upon the Territorial legislature; but that the validity of that authority and of the statute was not drawn in question. In order to give us jurisdiction of this appeal, the matter in dispute exclusive of costs must have exceeded the sum of $5000, or else, without regard to the sum or value in dispute, the validity of a patent or copyright must have been involved, or the validity of a treaty or statute of or an authority exercised under the United States have been drawn in question. Act of March 3, 1885, c. 355, 23 Stat. 443. Confessedly, the matter in dispute here did not reach the requisite pecuniary value, and the validity of no patent or copyright was involved, nor was the validity of a treaty questioned; and, as just stated, we are of opinion that the validity of no statute of the United States, nor of an authority exercised under the United States, was drawn in question within the intent and meaning of the jurisdictional act.

As was observed in *Lynch* v. *United States*, 137 U. S. 280, 285: "The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every time an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry." In *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, 226, the question in controversy was whether a railroad corporation, authorized by acts of Congress to

establish freight stations, and to lay as many tracks as "its president and board of directors might deem necessary" in the District of Columbia, had the right to occupy a public street for the purposes of a freight yard. It was argued that the validity of an authority, exercised under the United States, to so occupy the public streets, was drawn in question; but this court held otherwise, and said: "The validity of the statutes and the validity of authority exercised under them, are, in this instance, one and the same thing; and the 'validity of a statute,' as these words are used in this act of Congress, refers to the power of Congress to pass the particular statute at all, and not to mere judicial construction as contra-distinguished from a denial of the legislative power." And see *South Carolina* v. *Seymour*, 153 U. S. 353, where the cases are marshalled and applied. The result is that the motion to dismiss must be sustained.

*Appeal dismissed.*

MR. JUSTICE HARLAN dissenting.

I am of the opinion that this court has jurisdiction to review the judgment below, and, consequently, that the writ of error should not be dismissed.

We have jurisdiction to review the judgment or decree of the Supreme Court of a Territory, without regard to the sum or value in dispute in any case in which is "drawn in question the validity of . . . an authority exercised under the United States." Act of March 3, 1885, c. 355, 23 Stat. 443.

The city of Kaysville, Utah, was incorporated and its territorial limits were defined by an act of the territorial legislature passed February 13, 1868, c. 9, Laws of Utah, 1868, 8; 1 Compiled Laws of Utah, 1888, 427. That act provided that the city council "shall have authority to levy and collect taxes, for city purposes, upon all taxable property, real and personal, within the limits of the city." §. 7. Within those limits were the plaintiff's lands, part of a large body of what are alleged to be merely "agricultural lands," outside of the platted part of the city, and upon which, it was contended, taxes for city purposes could not be legally imposed.

Certain taxes were levied on the plaintiff's lands by the municipal corporation of Kaysville. The issue in the court of original jurisdiction was as to the liability of those lands for taxes assessed by that corporation under the authority given by the territorial statute. That court found, as conclusions of law, that " the organization of the city of Kaysville, including large quantities of agricultural lands which, at the time of its organization, could not be benefited by municipal government, was, at the time thereof, illegal and void, and that it now is illegal and void, as to the lands which cannot by any possibility be benefited by municipal government; " that " to impose tax upon such lands is contrary to that part of the Constitution which provides that private property shall not be taken for public purposes without just compensation ; " and that the lands of the plaintiff " being agricultural lands, to tax him would be to take his property without just compensation."

The District Court, therefore, held that the city of Kaysville " had no authority to tax the lands and property of Mr. Ellison for municipal purposes." It thus appears that the validity of the authority given by the territorial legislature, acting under the United States, to tax agricultural lands like those belonging to the plaintiff, was directly drawn in question and was passed upon by the court of original jurisdiction.

In the Supreme Court of the Territory the judgment was affirmed. It is true that the findings of fact in that court differed in some respects not vital in the present inquiry from those made in the inferior territorial court, but they disclosed the real issue between the parties, and the judgment of the Supreme Court proceeded distinctly upon the ground that a tax upon agricultural lands for city purposes was invalid and void. This appears from the following extract from the opinion of that court: " The questions involved in this case were fully considered and elaborated by this court in the case of *People* v. *Daniels*, 6 Utah, 288; *S. C.* 22 Pac. Rep. 159. The case involved the validity of a tax on agricultural lands for city purposes, and the tax was declared void. In that case Zane, Ch. J., in delivering the opinion of the court, said that

'taxation for city purposes should be within the bounds indi-
cated by its buildings or streets or alleys or other public im-
provements, and contiguous or adjacent districts so situated as
to authorize a reasonable expectation that they will be bene-
fited by the improvements of the city or protected by its
police; that no outside districts should be included when it is
apparent and palpable that the benefits of the city to it will
be only such as will be received by other districts not in-
cluded — such as will be common to all neighboring communi-
ties.' We see no reason to doubt the correctness of that
decision, and as it is decisive of the point involved in this case
the judgment of the District Court is affirmed."

That the Supreme Court of the Territory passed upon the
validity of the territorial statute so far as it authorizes the
taxation of agricultural lands for city purposes is made still
clearer by an examination of the opinion in *People* v. *Daniels*,
the decision in which was followed in the present case. In
that case it was adjudged that the taxation of agricultural
lands for city purposes was forbidden by the Fifth Amend-
ment of the Constitution which prohibited the taking of private
property for public use without just compensation. The court
said: " Inasmuch as it appears from the record in the case that
the defendant resides and that his lands are situated outside of
Moroni City, as indicated by public or private improvements,
and beyond such contiguous or adjacent district as will be
benefited by its municipal expenditure, the court holds that
the territorial legislature had no power to subject his property
to the burden of taxation for the corporate purposes of the
city. The judgment of the court below is reversed, and the
cause is remanded."

The present case then is this: The legislature of the Terri-
tory, exercising whatever authority it has " under the United
States," passed a statute which embraced certain agricultural
lands within the limits of Kaysville, and assumed to authorize
that municipal corporation to tax them for city purposes. The
action of the corporation and its officers is based upon the ter-
ritorial statute and is justified, if to be justified at all, only by
its provisions. Plainly, therefore, there was "drawn in ques-

tion " the authority of the territorial legislature, acting " under the United States," to confer upon a particular municipal corporation the power to tax the lands in question for purely city purposes. No question was presented as to the mere construction of the statute. It is not disputed that the plaintiff's lands are within the limits of Kaysville as defined by the act of the territorial legislature. It is conceded that the seizure of the plaintiff's wagon for the taxes on his lands was legal, if the statute of the Territory was constitutional so far as it authorized taxes to be imposed on such lands within the defined limits of Kaysville as were agricultural lands, namely, lands outside of the platted part of the city, which did not receive the benefits of the city government. I submit that there is no disputed question in the case, except that which involves the constitutional power of the territorial legislature, acting under the United States, to authorize the imposition of taxes for city purposes on lands situated as are those of the plaintiff. The facts were agreed and it is apparent that the parties intended to raise no question except as to the validity of the authority exercised by the territorial legislature in empowering the city of Kaysville to tax the lands here in question.

These views expressed by me are not at all in conflict with the decision in *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, 226. The validity of the act of Congress referred to in that case was not drawn in question. The issue there was as to whether certain things were within or were authorized by the provisions of that act. The dispute was as to the construction, not the validity, of the act of Congress. I cannot suppose that the Hopkins case would have been determined as it was, if it had appeared that the authority of Congress to pass the act referred to was drawn in question. Here there is drawn in question the validity of a statute of the territorial legislature, acting under the United States, which permitted the taxation of certain kinds of lands for city purposes.

It seems to me that if a case in a territorial court turns upon the validity of an act which is authorized by a statute of the territorial legislature deriving its existence and powers from the United States, and if that statute is itself drawn in ques-

tion as being repugnant to the Constitution of the United States, then we have a case in which is " drawn in question the validity of . . . an authority exercised under the United States.".