SHEPARD ET AL., RESPONDENTS, v. KAYSVILLE CITY ET AL, APPELLANTS.

STATUTORY CONSTRUCTION — CITY OF KAYSVILLE — JUDGMENT— PAYMENT OF—POWER TO LEVY TAX—PROCEDURE.

Under section 766, 1 Comp. Laws Utah 1888, the city council of Kaysville has authority to levy and collect taxes on the taxable property of the city for city purposes, and this authority carries with it power to levy and collect taxes for the payment of debts incurred for such purpose, or for city improvements. The method of procedure for levying general or special taxes by the city council is provided for in section 10, chap. 68, Sess. Laws 1892.

(No. 873.    Decided Feb. 8, 1898.)

Appeal from the Second district court, Davis county. H. H. Rolapp, *Judge.*

Application for mandamus by E. D. Shepard and August T. Post, partners as E. D. Shepard & Co., against the city council of Kaysville city. Writ ordered to issue, and defendant appeals. *Affirmed.*

*E. B. Critchlow,* for appellant.

*George Westervelt,* for respondents.

BARTCH, J.:

This was a proceeding in mandamus to compel the payment of a certain judgment obtained by the relators against Kaysville city, or, if that were impossible, then to compel the city council to levy a tax upon the taxable property of the city for the purpose of paying the same. Upon the hearing the court ordered the writ to issue, and the defendant appealed.

It appears from the stipulation of facts that in October, 1890, for the purpose of building a city hall, the city of Kaysville negotiated a loan of $5,000 with the respondents, issuing therefor, in the manner required by law, coupon bonds in the sum of $1,000 each, the coupons representing interest, and being payable semi-annually. Default was made in the payment of certain of these coupons, and thereupon, in March, 1897, the respondents herein brought suit, and recovered judgment against the city for the sum of $405. The city had no funds on hand to pay the judgment, and has taken no steps to levy any tax for the purpose of paying it; nor has it any property out of which the judgment can be satisfied upon execution. In answer to the petition of the relators, it is averred, substantially, that the city contains an area of about 23 square miles; that not more than two square miles of its territory is platted into lots and blocks; that the city is not thickly populated throughout its entire limits, some of the platted and unplatted portions of its corporate limits being devoted to agricultural purposes; that there are included within its limits many farms containing from 12 to 119 acres; that the city authorities know of no method by which to ascertain what property

is benefited by the municipal government, and liable to taxation for municipal purposes, and are advised and believe the taxes which they might levy would be unlawful, there being no line, natural or artificial, dividing the portion of the corporate limits which is benefited by the city government from that which receives no benefit or protection therefrom; and that no part of the platted portion of its territory is benefited more by the erection of the city hall and jail than any other portion. All these facts are admitted by stipulation. It is not contended that the city has no power to issue the bonds, nor that they were not issued in due form of law. The contention of the appellant amounts to this: that, after having issued the bonds in the manner prescribed by law, obtained the money in a lawful transaction, and used it for municipal improvements, and corporate benefit, it has no authority to raise revenue to pay the interest, and that the creditors, who have parted with their money in an attempt to recover what is due them, simply find themselves in the position of a creditor who holds the obligation of a debtor who is unable to provide the means of payment. A court of justice will not, for light reasons, give countenance to such a proposition so repulsive to fair dealing. In such case the corporate authority will be carefully scrutinized, with a view to enforcing payment if possible.

As it is admitted that the bonds were issued in accordance with the forms of law, it will be necessary to this decision to refer only to the statutory provisions concerning the raising of revenue for city purposes. In the charter of Kaysville city (1 Comp. Laws Utah, 1888, § 766) it is provided, as follows: "The city council shall have authority to levy and collect taxes, for city purposes, upon all taxable property, real and personal, with-

in the limits of the city, not exceeding one-half of one per cent per annum upon the assessed value thereof; and may enforce the payment of the same to be provided for by ordinance, not repugnant to the constitution of the United States or to the laws of this territory." The procedure in the case of the, levy of general or special taxes by the city council is contained in section 10, c. 68, p. 74, Sess. Laws 1892, which reads: "In cities of the third class and in incorporated towns and villages the general taxes of the city, town or village shall be levied and collected upon the assessment made by the county assessor, in the manner now or hereafter provided by law for such levy and collection, and special taxes shall be levied and collected in the same manner and form provided by law and the, ordinances of such town, city or village." As may be noticed, section 766 expressly authorizes the city council of Kaysville to levy and collect taxes for city purposes. This authority carries with it the power to levy and collect taxes for the payment of a debt incurred for such purposes or for city improvements; and it remains uncontroverted that the judgment, the payment of which is sought to be enforced in this case, is the result of a loan which was negotiated for municipal purposes. Hence the city council has the power, and it is its plain duty, to levy a tax upon all the taxable property within the city limits to satisfy the judgment of the respondents. Such levy, however, cannot exceed the amount limited by the statute, but there is no pretense that a levy in amount sufficient to satisfy the judgment would exceed such limit. Section 10 of the act of 1892 provides the manner in which the levy shall be made. It is thus apparent that the city council has ample statutory authority to levy a tax for the purpose of liquidating the claim in controversy. But it is insisted that this

power has been abridged, if not entirely abrogated, by judicial construction and decision; and in support of this position we are cited to the cases of *People* v. *Daniels*, 6 Utah, 288, and *Ellison* v. *Linford*, 7 Utah, 166.

In the former it appeared that the defendant owned a farm within the limits of a city, as defined by the territorial legislature, but it was situate two and a half miles from the town site or any improvements indicating a city; and because of a failure to list that property for taxation for municipal purposes he was prescuted, and found guilty of a violation of section 2023, 1 Comp. Laws Utah, 1888. On appeal the case was reversed, the court holding that the territorial legislature had no power to extend the limits of a city so as to include farms and outlying districts not benefited by the municipal government, and subject them to taxation for municipal purposes. In the latter case the defendant, a tax collector of the city of Kaysville, had levied upon and sold property of the plaintiff for unpaid municipal taxes, which had been levied by the city upon property so remote from the platted portion of the city, although within its territorial limits, as to receive no benefit from the city government; and the rule announced in the former case was followed, and the property held not taxable for municipal purposes. Those cases were decided by the territorial supreme court, and a territorial statute was construed. The government of the territory belonged primarily to congress, and was maintained through agencies which congress established. The territory was a mere dependency of the United States, and its people did not constitute a sovereign power. The legislature of the territory was a creature of congress, with only delegated power, and congress had reserved the right to annul any law which the legislature might pass. The en-

actments of such a legislature are construed less liber-
ally than would be those of a sovereignty, and are de-
clared void with less hesitancy if they manifest an un-
reasonable or improper exercise of power. Similar views
seem to have been entertained by the court in the case of
*People* v. *Daniels,* and it. is, therefore, a question of no
little importance whether we would be justified in apply-
ing the rule laid down in that case, and affirmed in *Elli-
son* v. *Linford,* to an enactment which has now the sanction
of a sovereign power. However, we do not deem it neces-
sary to decide this question in this case, because the essen-
tial facts and the nature and purposes of the suits in the
cases wherein the rule was declared and adopted are dif-
ferent from those herein. As has been observed, the
former was a prosection for failure to list property
which the court afterwards held was not taxable for
municipal purposes; the latter was a suit to recover dam-
ages for the seizure and sale, for unpaid taxes, of prop-
erty which was not taxable for such purposes; while this
is a proceeding to compel the levying of taxes on the tax-
able property of the city for the purpose of paying a
municipal debt. The writ of mandamus does not compel
the levying or collection of a tax on property not taxable
for city purposes, and we cannot presume that the city
authorities will commit an unlawful act, in attempting
to obey the writ, by levying upon property which they
have no right to tax; but we have a right to assume that
there is property within the corporate limits of the city
which is taxable for municipal purposes, and to hold it
the duty of the council to tax the same and pay the judg-
ment. Whether such property can be readily or easily
ascertained does not concern us. Nor is it incumbent
upon us to determine in this case whether there is a
natural or artificial line which separates the taxable

property within the corporate limits from that which is not taxable, if there be such, or where such line is. Common observation teaches that wherever there is an incorporated city there is property within its limits which is subject to taxation for city purposes, and it is idle for those who are intrusted with the municipal government to declare that they cannot ascertain such property. It may cause inconvenience, it is true, but inconvenience will not excuse a failure to pay a legitimate debt, or satisfy a judgment against the municipality. We perceive no error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.