Allen, J.
 

 Plaintiff in error urges that the judgment of the Court of Appeals violates the first section of Article IV of the Constitution of the United States, which provides:
 

 “Pull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.”
 

 As shown by the record, no witnesses were heard
 
 *228
 
 at the trial of this case, but the plaintiff introduced in evidence four exemplified copies, namely, the decree of the Supreme Court of the District of Columbia, a certified copy of the docket entries in the Supreme Court of the District of Columbia, a certificate of the clerk that a certain itemization of costs was a true and correct taxation of the costs, and a certificate of the clerk to the effect that Symons had paid costs in the Court of Appeals in the amount of $175.70. All of the said copies and certificates were duly authenticated in conformity with the Acts of Congress.
 

 The Court of Appeals of Cuyahoga county made no finding of facts, nor conclusions of law but affirmed the judgment of the municipal court, presumably upon the ground that evidence should have been introduced by way of deposition, to the effect that plaintiff, Symons, had actually paid the costs, to entitle Symons to recovery from Eichelberger, and held that without such proof the evidence was not sufficient to entitle the plaintiff to a judgment.
 

 It is difficult to understand this conclusion, in view of the fact that the record, in the certified copy of the docket entries, shows that a substantial part of the amount here claimed as costs by the plaintiff, namely, $61.60, was deposited by the plaintiff as security for costs in the Supreme Court of the District of Columbia and drawn against and consumed by that court as the case proceeded to hearing. Upon the facts, therefore, there is evidence in the case to the effect that the plaintiff had actually paid some of the costs. However, we do not'wish to decide this ease upon such
 
 *229
 
 narrow ground, and therefore proceed to inquire whether the decision of the Court of Appeals violated the full faith and credit clause of the federal Constitution. This clause, as given above, does not in its terms apply to the judicial decrees of any political entities except states. However, in the law passed March 27, 1804, by the United States Congress, as a supplement to the Act of May 26, 1790, pursuant to the second sentence of the above-quoted provision of the federal Constitution, to be found in volume 3, o. 409, p. 102, of the Laws of the United States, March, 1789, to March, 1815, we find provisions prescribing the mode in which the public acts, records, and judicial proceedings in each state should be authenticated so as to take effect in every other state.
 

 Section 2 of this supplemental act provides:
 

 “That all the provisions of this act, and the act to which this is a supplement, shall apply as well to the public acts, records, office books, judicial proceedings, courts and offices of the respective territories of the United States, and countries subject to the jurisdiction of the United 'States, as to the public acts, records, office books, judicial proceedings, courts and offices of the several states.”
 

 This statute has been held constitutional in
 
 Atchison, Topeka & Santa Fe Ry. Co.
 
 v.
 
 Sowers,
 
 213 U. S., 55, 29 Sup. Ct., 397, 53 L. Ed., 695, which holds that:
 

 “Under the provisions of the Constitution which declare the supremacy of the National Government, Congress has power to enact, as it has done by Sections 905, 906, Rev. Stat., that the same faith and credit be given in the courts of the states
 
 *230
 
 and territories to public acts-, records, and judicial proceedings of tbe territories as are given to those of the states under Article IV, Section 1, of the Constitution. ”
 

 Do the courts of the District of Columbia come within the provisions of this statute?
 

 The District of Columbia is not a state in the ordinary sense that states of the. Union are those political communities exercising various attributes of sovereignty, which compose the United States— as distinguished from organized municipalities, known as territories and the District of Columbia. It is not a sovereignty; the federal government is the sovereign. The District of Columbia is a part of the United States, and, in a certain sense, an agency of the national government, and yet it is not a department thereof, but is a municipal corporation differing in many important respects from the ordinary municipal corporations.
 

 However, the District is a separate political entity, and therefore is in a very qualified sense regarded by the courts as a state.
 
 Metropolitan Rd. Co.
 
 v.
 
 District of Columbia,
 
 132 U. S., 1, at page 9, 10 Sup. Ct., 19, 33 L. Ed., 231;
 
 Talbott
 
 v.
 
 Silver Bow County,
 
 139 U. S., 438, at page 444, 11 Sup. Ct., 594, 35 L. Ed., 210;
 
 Geofroy
 
 v.
 
 Riggs,
 
 133 U. S., 258, 10 Sup.
 
 Ct.,
 
 295, 33 L. Ed., 642.
 

 Since the District is only in a limited sense held by the courts to be a state, we shall now consider whether or not the District is better described as being a territory.
 

 As given in
 
 Metropolitan Rd. Co.
 
 v.
 
 District of Columbia,
 
 132 U. S., 1, 10 Sup. Ct., 19, 33 L. Ed., 231, the history of the District in substance is as
 
 *231
 
 follows: By the Act of Cong., Feb. 21, 1871 (16 Stat. 419), the District of Columbia was constituted a “body corporate for municipal purposes,” with power to make contracts, sue and be sued. A Governor and Legislature were created, and also a board of public works, the latter to consist of the Governor and four other persons to be appointed by the President and Senate. Prior to that time the government had been strictly municipal, and the United States government did not participate therein, in local matters. The act of June 20, 1874 (18 Stat. 116), abolished the government created by the act of 1871, and authorized the President and Senate to appoint a commission to exercise the power and authority then vested in the Governor and the board of public works. The act of June 11, 1878 (20 Stat. 102, o. 180), provided that the District should “remain and continue a municipal corporation,” and preserved all rights of action by and against it in
 
 statu quo.
 
 The
 
 Metropolitan Railroad Case,
 
 held that the District was a municipal corporation, with a right to sue and be sued, and not a department of the United States government, nor a sovereignty.
 

 In the strict sense of the word, as used in some court decisions, the District is not an organized territory. Since being made a municipal corporation, it is no longer “an inchoate state, a portion of the country not included within the limits of any state, and not yet admitted as' a state into the Union, but organized under the laws of Congress, with a separate legislature, under a territorial Governor and other officers appointed by the President and Senate of the United States.”
 
 *232
 

 Ex parte Morgan
 
 (D. C.), 20 Fed., 298, 305. It is, however, a territory within other court definitions.
 

 Territories are defined to be: “Mere dependencies of the United States, exercising delegated powers.”
 
 People
 
 v.
 
 Daniels,
 
 6 Utah, 288, 291, 22 Pac., 159, 160 (5 L. R. A., 444).
 

 It is stated in 38 Cyc., at page 194:
 

 “Although the term is sometimes used as not including all the territorial possessions of the United States, but only the portions thereof organized and exercising governmental functions under an act of Congress, it may now be considered as applicable to any political unit, subject exclusively to the federal government whose power thereover it is held to be that mates the subdivision a ‘territory’ rather than its geographical location, or the particular form of government with which it is, more or less temporarily, invested.”
 

 Under the above definitions except the first, the District is a territory. And, indeed, the District of Columbia at least at one period has been constituted a public corporation with all the characteristics of a territory. Its forms of government have varied from that of a municipality to that of at least a quasi territory with Governor and Legislature.
 
 Metropolitan Rd.
 
 v.
 
 District of Columbia,
 
 132 U. S., 1, 10 Sup. Ct., 19, 33 L. Ed. 231.
 

 We have, therefore, in the District of Columbia a political entity, which, for certain purposes, is held by the courts to be a quasi state; which, under the definition given in a number of judicial decisions, is a territory, or at least a quasi territory. The main distinction between the District and
 
 *233
 
 organized territories rests in the fact that its government is organized as a municipality and not as the ordinary territory, with Legislature and with Governor. The statute therefore applies here with double force, and whether we consider the District as a quasi state or as a quasi territory,, the full faith and credit clause of the United States Constitution as extended by the law passed by the United States Congress in 1804, vol. 3, c. 409, of the Laws of the United States, March, 1789, to March, 1815, ought upon every theory to apply to the courts of the District.
 

 Although the District of Columbia is an extensive and important political corporation, an exhaustive search reveals comparatively few decisions defining its exact status, and applying the full faith and credit clause to courts of the District. The cases to be found upon the point support the above view.
 
 Johnson
 
 v.
 
 Dobbins,
 
 12 Phila. (Pa.) 518;
 
 Green
 
 v.
 
 Sanborn,
 
 150 Mass., 454;
 
 Embry
 
 v.
 
 Palmer,
 
 107 U. S., 3, 2 Sup. Ct. 25, 27 L. Ed. 346.
 

 The syllabus of the
 
 Green Case
 
 is as follows:
 

 “In an action of contract in the courts of the District of Columbia, a valid plea setting up a claim properly a matter of set-off was filed by the defendant, and issue was joined thereon. At the trial, upon the defendant’s offering to prove his plea in set-off, the plaintiff objected, and the presiding judge, upon a full statement of the nature and amount of the defendant’s claim and argument bv counsel, ruled, as matter of law, that ‘the claim pleaded in set-off could not be sustained, and that, no evidence in support of it could be admitted,’ and excluded all evidence to prove it, and a verdict and
 
 *234
 
 judgment were rendered for the plaintiff. Held, in an action on the judgment, that the matters pleaded in set-off in the original action were
 
 res judicata,”
 

 The
 
 Embry Case
 
 squarely decides that the Supreme Court of the District of Columbia is a court of the United States, and its judgment, when suit is brought thereon in any State of the Union, is under the legislation of ' Congress conclusive upon the defendant, except for such cause as would be sufficient to set it aside in the courts of the District.
 

 Hence we hold that the judgment sued upon in the municipal court of Cleveland was protected by the full faith and credit clause of the Constitution.
 

 See also
 
 Ormsby
 
 v.
 
 United States,
 
 273 Fed., 977.
 

 As to the scope of the full faith and credit clause of the Constitution, it is now held by every one of the state courts, in a host of authorities, that, when a judgment has been rendered in one state by a competent court with jurisdiction of the subject-matter and of the person, that judgment is conclusive on the merits in the courts of every other state when made the basis of an action or defense, and the merits cannot be reinvestigated. 23 Cyc. 1553, note 94, and cases cited.
 
 Goodrich
 
 v.
 
 Jenkins,
 
 6 Ohio, 43;
 
 Spencer, Treas.,
 
 v.
 
 Brockway,
 
 1 Ohio, 259, 13 Am. Dec., 615;
 
 Albright
 
 v.
 
 Boyd,
 
 85 Ohio St., 34, 96 N. E., 711.
 

 If plaintiff has any right to recover costs in this action in the municipal court, it derives from the judgment of the Supreme Court of the District of Columbia which awarded him a decree for
 
 *235
 
 those costs. A copy of the decree, authenticated, was introduced in evidence in the municipal court of Cleveland. The decree gives judgment in favor of the plaintiff for a specific amount, specifically names Eichelberger as the person who is indebted to the plaintiff for that amount, and specifically adjudges that execution shall issue to collect the costs.
 

 Defendant in error urges that plaintiff in error in addition to proving the authenticated decree must show that he himself had paid the costs before he can collect the judgment. But the decree has settled the question of liability. The decree definitely names the sum which is to be paid. Any demand for further evidence, either upon the liability of the defendant or upon the amount of the decree, challenges the decree of the Supreme Court of the District of Columbia. That decree is conclusive on the merits under the full faith and credit clause of the Constitution, and cannot be questioned as to amount or liability in the municipal court.
 

 The defendant in error maintains, however, that the judgment of the Supreme Court of the District of Columbia does not appear upon its face to be a final judgment; that the decree of divorce therein entered is interlocutory merely, and that therefore no recovery can be had upon the order for recovery of costs. In the decree the court “adjudges, orders, and decrees” that the “plaintiff, William L. Symons, recover his costs in said Court of Appeals to the amount of one hundred seventy-five dollars and seventy cents ($175.70) as directed in said mandate against the defendant Frederick Eichelberger, and have execution therefor.”
 

 
 *236
 
 The essentials of a judgment are that it should on its face appear to be the sentence or adjudication of a court or judicial tribunal, and to constitute the judicial act of the court. The judgment must be rendered in an existing action and must decide an issue either of law or of fact. A judgment upon an issue of pecuniary liability performs its main function when it adjudicates the existence or nonexistence of the liability sought to be established. A judgment also should be certain and definite and should state the time of its rendition, the parties, the matter in dispute, and the result of the action, with the relief granted. All of these essentials exist in this order for the payment of costs.
 

 It is true that the decree is interlocutory as to the matter of divorce; but as to costs the decree is final against Eichelberger, and hence this contention is overruled.
 

 • As his next point, defendant in error urges that no evidence was offered to show that the Supreme Court of the District had jurisdiction of this case, and that proof upon that point should have been offered in the municipal court of Cleveland.
 

 There is no Ohio decision upon this question. It it true that in a number of recorded Ohio cases involving actions upon judgments of sister states evidence was introduced as to the laws of the state conferring jurisdiction upon the court rendering the judgment.
 
 Sipes
 
 v.
 
 Whitney,
 
 30 Ohio St., 60;
 
 Spier
 
 v.
 
 Corll,
 
 33 Ohio St., 236;
 
 Pennywit
 
 v.
 
 Foote,
 
 27 Ohio St., 600.
 

 However, the syllabi of these cases do not contain any holding upon this precise point. The
 
 *237
 

 Spier Case,
 
 for instance,-.in the first paragraph of the syllabus holds that “the jurisdiction of a court or tribunal entering a judgment in any particular* case may always be inquired into, when such judgment is made the foundation of an action, either in a court of the state in which, it was rendered,, or of any ;other state.” ¡
 

 This is very different from holding that jurisdiction must be proved when the judgment of a. eourf of record of a sister state is made the basis of the action. We concede that it is the rule both under the law of Ohio and under the general law that jur7 isdiction may be inquired into in an action upon the judgment of a sister state; but the question before us here is whether in addition to introducing in evidence a duly authenticated transcript and record of judgment of a sister state, the plaintiff should have introduced in evidence the law of that state showing the existence and authority of the court to render the judgment.
 

 The Supreme Court of the District of Columbia is a court of record, — a court of general jurisdiction.
 

 There being no Ohio holding upon this specific, matter, we are remitted to the general law, and we find that the great weight of authority is that in a suit upon a judgment rendered by a court of general jurisdiction in a sister state or territory, jurisdiction is presumed and the defendant must himself introduce evidence tending to negative jurisdiction if he wishes to rely upon that contention. 23 Cyc., p. 1577, and a host of cases cited.
 
 Van Matre
 
 v.
 
 Sankey,
 
 148 Ill., 536;
 
 Smith
 
 v.
 
 Central Trust Co.,
 
 154 N. Y., 333;
 
 Old Wayne Mutual Life Association of Indianapolis
 
 v.
 
 McDonough,
 
 164
 
 *238
 
 Ind., 321. Hence it was not necessary for the plaintiff to prove jurisdiction of the Supreme Court of the District to render the judgment sued upon in the municipal court of Cleveland.
 

 Defendant in error finally claims that the judgment here sued upon, if it be held to be final and binding, has no extraterritorial effect, because it is in the nature of a penalty, and thus cannot be enforced within this state. We fail to see anything in- this decree in the nature of a penalty. The judgment is given for a definite amount of costs which the plaintiff was forced to advance to carry on his suit. According to the decree of the Supreme Court of the District of Columbia those costs were incurred because of the misconduct of the defendant Eichelberger.
 

 Costs are not at the present time considered as punishment. The modem theory is that costs are allowances authorized by statute to reimburse the successful party for expenses incurred in prosecuting or defending an action or special proceeding. They are in the nature of incidental damages allowed to indemnify a party against the expense of successfully asserting his rights in court.
 
 Forbes
 
 v.
 
 Chicago, R. I. & P. Ry. Co.,
 
 150 Iowa, 177, 129 N. W., 810, Ann. Cas, 1912D, 311;
 
 Spores
 
 v.
 
 Maude,
 
 81 Or., 11, 16, 158 Pac., 169;
 
 Apperson
 
 v.
 
 Insurance Co.,
 
 38 N. J. Law, 388. Being in the nature of damages, costs do not constitute a penalty.
 

 Moreover, the case of
 
 Spencer
 
 v.
 
 Brockway,
 
 1 Ohio, 259, 13 Am Dec., 615, at least in part, holds contrary to the contention urged. The
 
 *239
 
 second and third paragraphs of the syllabus read as follows:
 

 “Suit upon a judgment for violation of penal laws in a sister state sustained. Judgment in a sister state cannot be impeached here.”
 

 That case holds that while the courts of this state will not enforce the penal laws of another state, yet where a recognizance, taken in another state, for a violation of a penal law, was declared forfeited, and in an action thereon, judgment was rendered in that state in favor of the state treasurer, an action may be maintained on that judgment in the courts of this state. The suit is then an action for the recovery of money founded upon a judgment, and not founded upon the penal law of the sister state.
 

 Applying this reasoning to the instant case it is evident that whether or not the adjudication in the District of Columbia was penal in its nature the suit in Ohio is not a suit upon a penalty, but is an action for a money recovery founded upon a judgment.
 

 For the above reasons the judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Robinson and Jones, JJ., concur.
 

 Wanamaker, J., not participating.