520 S.E.2d 662

STATE of West Virginia, ex rel. Steven CANTERBURY, Executive Director of West Virginia Regional Jail and Correctional Facility Authority, Petitioner,

v.

Carl "Worthy" PAUL, Magistrate for Ohio County, Respondent.

No. 25890.

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1999.

Decided July 14, 1999.

Dissenting and Concurring Opinion of Chief Justice Starcher Oct. 18, 1999.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Chad M. Cardinal, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Petitioner.

John M. Hedges, Esq., Byrne and Hedges, Morgantown, West Virginia, Attorney for the Respondent.

MAYNARD, Justice:

In this petition for a writ of prohibition, we are asked to address a magistrate's interpretation of W.Va.Code § 50–3–2 (1996), which requires magistrates to impose certain court costs upon conviction in criminal cases. The petitioner in this case, the West Virginia Regional Jail and Correctional Facility Authority (Jail Authority), asserts that the respondent magistrate is wrongfully refusing to impose those statutory court costs.

After careful consideration of the arguments of the parties, we find that the magistrate's refusal to impose those court costs ignores the legislative intent of the statute. The magistrate has interpreted the statute in a manner that conflicts with an interpretation of the statute by the Office of the Administrative Director of the Courts. Furthermore, the disputed language in W.Va. Code § 50–3–2 (1996) was eliminated through an amendment by the Legislature in 1999, and the new version of the statute clearly evinces a legislative intent that magistrates are to collect court costs upon conviction in all criminal cases.

We therefore grant the requested writ of prohibition, as moulded.

I.

FACTS AND BACKGROUND

By a letter dated October 22, 1997, the respondent in this case, Ohio County Magistrate Carl "Worthy" Paul, informed the Office of the Administrative Director of the Courts that he was troubled by certain court cost assessments. Specifically, Magistrate Paul challenged the assessment of $55.00 in

court costs in certain criminal cases, as required by W.Va.Code § 50–3–2 (1996). Of this $55.00 fee, W.Va.Code § 50–3–4a (1990) mandates that $40.00 be delivered to the State treasury for placement into the regional jail and prison development fund.

In his letter, Magistrate Paul stated he would only impose the $55.00 fee in cases where a criminal defendant was convicted after a trial, and conversely would not impose the $55.00 fee where the conviction was the result of a plea. Magistrate Paul wrote:

> Some assessments of court costs are troubling me. I would appreciate your review and comments. Heretofore, I naively accepted the assessments as they have been in place.
>
>   *  *  *
>
> W.Va.Code 50–3–2 provides for the assessment of $55.00 in fees in "each criminal case tried". The operative term is "tried". Guilty pleas, whether to a citation or upon complaint and warrant, are not tried. There is no trial. What authority is there to assess this fee on guilty pleas?
>
>   *  *  *
>
> Unless there is authority to support the status quo, my oath requires me to simply follow the law as written by the legislature and start assessing costs as they have [been] prescribed.
>
> Costs should be assessed as follows: ...
>
> 4. The $55.00 assessment at W.Va. Code 50–3–2 is made only on matters that are tried, not on pleas[.]
>
>   *  *  *
>
> [N]o later than 1 January 1998 I intend to implement the assessments as statutorily directed.

In response to Magistrate Paul's letter, as well as similar inquiries from other magistrates, on August 26, 1998, the Office of the Administrative Director of the Courts issued Memorandum No. 98–29 to all sitting and senior-status magistrates. In that Memorandum, the Administrative Office interpreted W.Va.Code § 50–3–2 (1996) to mean that magistrates are required to assess the $55.00 fee in every criminal case where the defen-

dant is adjudged guilty, whether by plea or by trial. The Memorandum states:

> Magistrates are to impose costs in a criminal case upon conviction of a defendant. While the language of the statute refers to each criminal case "tried" in a magistrate court, a conviction may occur as a result of a defendant [being] found guilty as a result of a bench or jury trial, or as a result of a magistrate accepting a guilty plea. Therefore, the assessment should be made in each criminal case which results in a conviction regardless of how that conviction occurred.

The parties appear to agree that, even after receiving Memorandum No. 98–29, Magistrate Paul willfully refused to collect the $55.00 fee in cases in which the defendant was convicted by reason of a guilty plea.

On March 10, 1999, the West Virginia Regional Jail and Correctional Facility Authority, by its executive director Steven Canterbury, petitioned this Court for a writ of prohibition. The petition alleged that Magistrate Paul exceeded the jurisdiction of the magistrate court by refusing to assess the $55.00 fee in all criminal proceedings pursuant to W.Va.Code § 50–3–2 (1996), thereby depriving the regional jail and prison development fund of its dedicated source of revenue.

By an order entered March 30, 1999, this Court issued a rule to show cause, and set the matter for argument.

## II.

### STANDARD OF REVIEW

We set forth the factors we consider for granting a writ of prohibition in Syllabus Point 4 of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), where we held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2)

whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

We examine this case with these factors in mind.

### III.

### DISCUSSION

■ The parties in this case dispute the meaning of W.Va.Code § 50–3–2 (1996), which provided, in pertinent part:

In each criminal case tried in a magistrate court in which the defendant is convicted, there shall be imposed, in addition to such other costs, fines, forfeitures or penalties as may be allowed by law, costs in the amount of fifty-five dollars.

However, on March 10, 1999, W.Va.Code § 50–3–2 (1996) was substantively amended by the Legislature. Enrolled Senate Bill 374 amended this part of the statute to read as follows:

(a) In each criminal case before a magistrate court in which the defendant is convicted, *whether by plea or at trial,* there shall be imposed, in addition to other costs, fines, forfeitures or penalties as may be allowed by law, costs in the amount of fifty-five dollars. (Emphasis added).

This statute took effect June 8, 1999, 90 days after its passage.

Of the fees assessed in a criminal case in magistrate court, including those imposed under both W.Va.Code § 50–3–2 (1996) and

W.Va.Code § 50–3–2 (1999), $40.00 must be paid into the regional jail and prison development fund. This is mandated by W.Va.Code § 50–3–4a (1990), which states, in pertinent part:

The clerk of each magistrate court shall, at the end of each month, pay into the regional jail and prison development fund in the state treasury an amount equal to forty dollars of the costs collected in each criminal proceeding[.]

The Jail Authority states that pursuant to a bond indenture, deed of trust and security agreement dated August 1, 1988, the Jail Authority sold $117,495,000.00 in revenue bonds for the construction and maintenance of several jail facilities. To repay these bonds, the Jail Authority relies on revenue generated solely from fees, fines and costs collected and deposited in the regional jail and correctional facility development fund pursuant to numerous statutes[1] including W.Va.Code § 50–3–2 (1996).

In fiscal year 1997, approximately $10,000,000.00 was collected by the Jail Authority through magistrate court fees. The Jail Authority contends that if any substantial portion of these fees, fines and costs are not paid, the Jail Authority will have insufficient revenue to pay for the bonds, resulting in a default by the State on the bonds. The Jail Authority further contends that even a small diminution in collections may result in a failure of the Jail Authority to meet the "debt service coverage" requirements of the bonds, which would also constitute a default.

■ In its petition to this Court, the Jail Authority directs the Court to numerous statutes which suggest that the collection of the $55.00 fee by a magistrate in every criminal case is mandatory. The Jail Authority proposes that we read and apply these statutes together to ascertain the legislature's intent, which we will do. "[S]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3,

---

1. The Jail Authority identifies the following Code sections: W.Va.Code §§ 7–5–1 to 23, W.Va.Code §§ 8–11–1 to 5, W.Va.Code §§ 50–3–1 to 8, and W.Va.Code §§ 59–1–1 to 39.

*Smith v. State Workmen's Compensation Com'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). The Jail Authority argues that Magistrate Paul's refusal to assess court costs in every criminal case circumvents the legislative intent behind W.Va.Code § 50–3–2, and is inconsistent with the duties of a magistrate.

Magistrate Paul contends that the issues raised by the Jail Authority are moot by reason of the 1999 legislative amendments to W.Va.Code § 50–3–2. He takes the position that because the new version of the statute broadens the statutory language to now require a magistrate to assess costs in all criminal cases, there is no legal issue remaining for this court to decide.[2] We disagree.

In our examination of the numerous Code sections pertaining to fees and costs in magistrate court cases, it is clear that through the enactment of W.Va.Code § 50–3–2 (1996) the Legislature intended for each defendant convicted in a criminal case to pay fees to support the administration of the criminal justice system. In other words, the Legislature intended for defendants to pay for the construction of the jail system. While we respect Magistrate Paul's reading of W.V.Code § 50–3–2 (1996), we believe it is a deviation from what the Legislature intended. The language of the statute refers to each criminal case "tried;" however, a conviction in a magistrate court criminal case may occur as a result of a defendant being adjudged guilty by a bench or jury trial, or as a result of a guilty plea.

Furthermore, the Legislature appears to have clarified the statutory language at issue in this case during the 1999 legislative session. Enrolled Senate Bill 374 amended W.Va.Code § 50–3–2 to make clear that costs, even under the 1996 version of the statute, were and are henceforth to be imposed in every criminal case "in which the defendant is convicted, whether by plea or at trial." Accordingly, we hold that pursuant to W.Va.Code § 50–3–2 (1996), a magistrate shall assess $55.00 in court costs in each case that results in a conviction, regardless of whether the conviction is the result of a plea or a trial.

We find it very troubling that Magistrate Paul continued to refuse to collect these costs even after the administration of this Court directed that all magistrates do so and after the Legislature changed the statute. We previously stated that this Court specifically informed all magistrates on August 26, 1998 that "the assessment should be made in each criminal case which results in a conviction regardless of how that conviction occurred." The Legislature thereafter changed the statute to clarify that "conviction" means "by plea or at trial." There is no sensible or legal reason to justify this magistrate's failure to impose these costs in the interim between the time this statutory change passed the Legislature and the bill's effective date, that being March 10, 1999 to June 8, 1999. Nevertheless, he stubbornly refused to impose the costs during that period, which is a gross dereliction of duty.

■ The Jail Authority has requested that we issue a writ of prohibition preventing Magistrate Paul from exceeding his statutory jurisdiction by not imposing the $55.00 fee in all criminal cases that result in a conviction. In accordance with the standards in *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), we agree with the Jail Authority that Magistrate Paul's decision to refuse to assess the statutory $55.00 fee where a conviction is the result of a plea is clearly erroneous as a matter of law. Furthermore, it appears that Magistrate Paul's decision is and will be "an oft repeated er-

---

**2.** Our well-established law concerning moot questions was stated in Syllabus Point 1 of *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908):

Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property, are not properly cognizable by a court.

*In accord,* Syllabus Point 5, *West Virginia Educ. Ass'n. v. Consolidated Public Retirement Bd.,* 194 W.Va. 501, 460 S.E.2d 747 (1995); Syllabus Point 1, *State ex rel. Durkin v. Neely,* 166 W.Va. 553, 276 S.E.2d 311 (1981); Syllabus Point 3, *State ex rel. Capitol Business Equipment, Inc. v. Gates,* 155 W.Va. 64, 180 S.E.2d 865 (1971); Syllabus Point 1, *State ex rel. West Virginia Secondary School Activities Commission v. Oakley,* 152 W.Va. 533, 164 S.E.2d 775 (1968); Syllabus Point 1, *Swartz v. Public Service Commission,* 136 W.Va. 782, 68 S.E.2d 493 (1952).

ror." Most importantly, the Jail Authority has no right of appeal in any magistrate court criminal case, and therefore could never bring this issue before this Court through an appeal.

We therefore agree with the Jail Authority that a writ of prohibition should issue in this case. We hereby order Magistrate Paul to henceforth impose the statutory fee in all criminal cases resulting in a conviction, without regard to whether the conviction is the result of a plea or a trial.

The Jail Authority has also requested that we order the "tax department to conduct a full audit of the Ohio County Magistrate Court system to determine the arrearage in unpaid costs, and award [the Jail Authority] any and all monies [Magistrate Paul] has wilfully refused to collect." This issue is now moot. On May 27, 1999, the State Tax Commission released an audit report of the Ohio County Magistrate Court. As this information was not available or in existence at the time the petition was filed, the Jail Authority moved to supplement the record to include this report. We granted the request. The report shows that Magistrate Paul failed to assess costs totaling $89,882.00 for the reporting period which ended December 31, 1998. The audit shows further that the failure of the magistrates in Ohio County to collect these fees cost Ohio County $184,-058.00 in lost revenues.

■ The Jail Authority requests that we compel Magistrate Paul to revisit past, completed criminal cases and collect the $55.00 fee in those cases where the defendant was convicted as the result of a plea. We believe this is proper. It is fundamental that "[t]he laws of costs shall not be interpreted as penal laws[.]" W.Va.Code § 59–2–11 (1923). Rather,

> [t]hey should be construed as remedial statutes and liberally and beneficially expounded for the sake of the remedy which they administer. The laws of costs may at any time be changed and modified. They may be increased or diminished at the will and pleasure of the legislature and apply to all prosecutions, whether they are for

offenses committed before or after the passage of the act.

5B M.J. *Criminal Procedure* § 99 (1990).

■ An early Virginia case held that because costs constitute no part of the punishment for a crime, a pardon does not relieve the pardoned felon of his obligation to pay the costs associated with his prosecution. *Anglea v. Commonwealth,* 51 Va. (10 Gratt.) 696, 701 (1853). We quote favorably from a later case where the Supreme Court of Appeals of Virginia stated that "[c]osts assessed against a person who has been convicted of a crime are not part of his punishment for the crime." *Wright v. Matthews,* 209 Va. 246, 248, 163 S.E.2d 158, 160 (1968) (citations omitted). Costs are, instead, collected to reimburse the state for necessary expenditures in the enforcement of its violated laws.

■ As costs are not punishment or part of the penalty for committing a crime, constitutional double jeopardy protections do not apply. In *Lindsey v. Dykes,* 129 Fla. 65, 175 So. 792 (1937), the defendant was convicted of and sentenced for driving under the influence of alcohol. He was fined and ordered to pay the costs of prosecution; however, the judgment did not sufficiently designate the amount of costs to be recovered. The defendant paid the fine but failed to pay the costs which the clerk assessed against him. The Supreme Court of Florida held that since the judgment as entered did not sufficiently designate the amount of the costs to be recovered, the court could enter a nunc pro tunc order designating the amount of costs to be collected in order to comply with the statute which required that the costs of prosecution be included in the judgment rendered against a convicted person. In so ordering, the court did not even take double jeopardy protections into consideration. We, too, believe that since costs are not penal in nature, recovering these fees from defendants against whom the magistrate improperly refused to assess them is not the imposition of a greater penalty and does not violate constitutional protections against double jeopardy.

Since this is an administrative matter, Magistrate Paul and the other magistrates must make a good faith effort to collect all of the fees which were not previously assessed.

Inasmuch as the assessment of costs is purely an administrative task, the magistrate court clerk must notify each defendant that these costs must be paid. The clerk of the magistrate court will coordinate with the Office of the Administrative Director of the Courts to prepare a proper notice to be sent to all defendants to collect these costs. The notice should advise that the magistrate failed to collect statutory costs, that the costs are mandatory and must be paid.

## IV.

## CONCLUSION

We grant the requested writ of prohibition as moulded. The Magistrate Court of Ohio County and Magistrate Paul are ordered to make a good faith effort to collect the court costs which the court previously failed to assess for convictions resulting from a plea, and henceforth, to assess the $55.00 in court costs required by W.Va.Code § 50-3-2 in all criminal cases resulting in a conviction, whether by plea or trial.

Writ granted as moulded.

STARCHER, Chief Judge, concurring in part and dissenting in part:

(Filed Oct. 15, 1999)

The majority opinion in this case is one of the greatest thefts of constitutional power that I have ever seen. The majority opinion trampled on both the concept of separation of powers and the concept of double jeopardy—and did it so quietly that no one is likely to even notice.

While I concur with the majority that the now-defunct 1996 version of *W.Va.Code,* 50-3-2 *could* be read to require a magistrate to collect the $55.00 in court costs in every criminal case where a defendant is adjudged guilty, whether by plea or trial, I also believe that Magistrate Paul properly acted as a constitutional officer in interpreting the less-than-clear statutory language.

I must dissent because the majority opinion ignores Magistrate Paul's status as a constitutional officer. Article VIII, section 10 of the *West Virginia Constitution* establishes magistrate courts and their basic jurisdiction over criminal matters. The *Constitution* also specifies that the Legislature cannot require that magistrates be attorneys; however, Magistrate Paul is himself a licensed attorney. Because many magistrates are not attorneys, the Supreme Court Administrative Office provides magistrates with legal assistance in interpreting statutes.

As a constitutional officer, on October 22, 1997 Magistrate Paul wrote a letter to the Supreme Court Administrative Office asking for the assistance of legal counsel to clarify the meaning of *W.Va.Code,* 50-3-2 [1996]. Ten months later, the Administrative Office responded with a general advisory memorandum directed to all magistrates that was intended to clarify several legal questions raised by magistrates, including Magistrate Paul's question. This August 26, 1998 memorandum suggested that magistrates were required by *W.Va.Code,* 50-3-2 [1996] to collect the $55.00 fee whenever a defendant was found guilty, whether by plea or trial.

One fact is missing from the majority opinion: the memorandum from the Administrative Office begins with a caveat stating that magistrates are not bound to follow the advice in the memorandum. The memorandum states:

> The purpose of this memo is to address a number of recurring "miscellaneous" issues which have been brought to our attention by magistrates during conferences or via phone calls. Please be reminded that the following information is provided for purposes of education and informal reference only. The only official statements of the law are those contained in opinions and orders of the courts, and in state and federal codes.

The majority opinion avoids this paragraph of the memorandum, and reaches the conclusion that the Court is "very troubl[ed] that Magistrate Paul continued to refuse to collect these costs even after the administration of this Court *directed* that all magistrates do so[.]"[1] I do not read the memorandum as

---

1. The majority opinion also states the Court is "very troubl[ed] that Magistrate Paul refused to collect these costs ... after the Legislature changed the statute." The Legislature amended

*directing* magistrates to act in a mandatory fashion.

The Constitution posits only the "judicial power of the State" in the Supreme Court, and gives the Court the "general supervisory control over all ... magistrate courts." *W.Va.Const.* Art. VIII, §§ 1, 3. The purpose of this constitutional clause is to provide a unified court system and to centralize administrative authority in this Court. Under the authority of this constitutional clause, this Court can also promulgate administrative rules and procedures. *See Gilman v. Choi,* 185 W.Va. 177, 406 S.E.2d 200 (1990).

But nowhere in the *Constitution* is there any authority allowing this Court, through its Administrative Office, to administratively interpret a criminal statute, and force that interpretation upon a circuit judge or magistrate. Yet that is exactly what the majority opinion in this case says can happen.

According to the majority opinion, the Supreme Court's Administrative Office can issue its administrative interpretation of a statute—any statute—and any magistrate or judge must follow that interpretation, even if it is totally contrary to the language of the statute, the constitution, or any case law. And, of course, as an interpretation by an "officer of government," the courts must give deference to that interpretation. This Court has stated:

> Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.

Syllabus Point 7, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975).

So if anyone can find a statute "of doubtful meaning," you need only seek the advice of the Administrative Office for a construction of the statute—and no magistrate, or presumably judge, anywhere in this State, may disregard that construction. Period. Granted, there's no constitutional authority for this position, but that's what the majority's opinion says.

The majority opinion also tramples on fundamental principles of double jeopardy. The *West Virginia Constitution* protects a defendant against being "twice put in jeopardy of life or liberty for the same offence." *W.Va. Const.* Art. III, § 5. The defendants who plead guilty before Magistrate Paul paid their fines, did their time, and are more than likely going about their business without a clue of what the majority did in this case. Remember—neither the defendants nor the Ohio County Prosecuting Attorney are parties to this action.

The defendants are about to get a surprise when they are dragged back into court to be again "put in jeopardy of life or liberty for the same offense," by requiring that they pay up an additional $55.00. The majority cannot seriously contend that it is not a punishment to require a criminal defendant to pay a "fee" upon conviction. A punishment is "any pain, penalty, suffering or confinement inflicted upon a person ... for some crime or offense." *Black's Law Dictionary.* At a minimum, under *W.Va.Code,* 17B–3–3a [1992] the Department of Motor Vehicles "shall suspend the license of any resident ... [when such person defaults] on the payment of costs ... which were imposed on the person by the magistrate court ..." Hence, the defendants will be required to pay the $55.00 fee to the magistrate court or face some restraint— such as the loss of driving privileges.

The majority sloughs this problem off, finding that under *W.Va.Code,* 59–2–11 [1923], "[t]he laws of costs shall not be interpreted as penal laws[.]" The majority concludes that because the $55.00 in costs are not penal, double jeopardy is not implicated. In other words, even though these defendants face a penalty such as losing their

---

*W.Va.Code,* 50–3–2 on March 10, 1999—the exact same day that Petitioner Canterbury filed his writ of prohibition with this Court. The statute did not take effect until 90 days after passage, or June 8, 1999.

There is nothing in the record to suggest that Magistrate Paul did not collect the statutory fee after March 10, 1999. It is also unclear from the majority's opinion why Magistrate Paul was supposed to apply the 1999 version of *W.Va.Code,* 50–3–2, 3 months before it took effect.

license, the penalty isn't penal because there is a statute saying it isn't a penalty.

I believe that *W.Va.Code*, 59–2–11 has absolutely no application to this case. The statute applies entirely to courts acting within their equity jurisdiction, not acting within their criminal jurisdiction. Under the common law, costs could not be recovered from an opponent in an equitable proceeding. *W.Va.Code*, 59–2–11 was enacted to allow a prevailing party to recover costs. This position is supported by the language of the statute, which specifically links the word "costs" to the "discretion of a court of equity over the subject of costs." [2]

Finally, if it looks like a duck and sounds like a duck, it's a duck. The fees in a penal case are part of the penalty. The majority opinion requires Magistrate Paul to "administratively" collect a penalty that is the result of a conviction, or face additional penalties—and do so after the defendant has already concluded his or her sentence. This flatly violates the double jeopardy protections of the *West Virginia Constitution*.

If Magistrate Paul truly failed to collect $89,882.00 in fees at $55.00 per defendant, it means that the Ohio County prosecutor had in the range of 1,634 opportunities to appeal Magistrate Paul's interpretation of the statute, or 1,634 opportunities to seek a writ of prohibition from the Circuit Court of Ohio County or this Court. The prosecutor obviously never thought Magistrate Paul's actions were problematic.

It is therefore totally unfair and unreasonable for this Court to require Magistrate Paul, or the magistrate court clerk, to go back and wrest fees from people who paid their fines and did their time over 19 months

2. *W.Va.Code*, 59–2–11 [1923] states:

The laws of costs shall not be interpreted as penal laws; nor shall anything in this article take away or abridge the discretion of a court of equity over the subject of costs, except that in every case in an appellate court costs shall be recovered in such court by the party substantially prevailing.

I can find no case where this Court has ever applied *W.Va.Code*, 59–2–11 in the context of a criminal case. An identical, predecessor statute from the Mother State of Virginia has similarly never been applied in the criminal arena. *Va. Code*, 17.1–600 [1998] states that:

ago. I would suggest that in addition to being unconstitutional, it is impractical, if not impossible, to collect fees from persons who may live anywhere (because the fee is to be collected from every defendant, not just those living in Ohio County, or even in West Virginia), and who have no idea about the existence of this case.

In sum, I agree that *W.Va.Code*, 50–3–2 [1996] could be interpreted to mean a defendant must pay the fee upon conviction, whether by plea or trial. However, I cannot agree with the reasoning employed by the majority opinion to require that the fees be retrospectively collected, in violation of the *Constitution*. I therefore concur in part and dissent in part to the majority's opinion.

The laws of costs shall not be interpreted as penal laws; nor shall anything in this chapter take away or abridge the discretion of a court of equity over the subject of costs . . .

Virginia's statute has repeatedly been interpreted to apply *only* to equity cases. The cases from Virginia indicate that "these sections, as thus codified, have remained unchanged" since their enactment in 1849, and that they "apply to suits in chancery"—and by inference, it is obvious that the Virginia statute was never intended to apply to criminal cases. *City of Richmond v. County of Henrico*, 185 Va. 859, 862, 41 S.E.2d 35, 38 (1947).