**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Trevor HOWELL, Defendant–Appellant.**

No. 01CA0905.

Colorado Court of Appeals, Div. I.

Sept. 12, 2002.

Certiorari Denied Feb. 24, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

Ken Salazar, Attorney General, Monica M. Marquez, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Trevor Howell, appeals the order revoking his probation, imposing previously suspended prison and jail terms, and assessing costs on his convictions for first degree trespass and false imprisonment. We affirm in part, reverse in part, and remand with directions.

A jury convicted defendant upon evidence that he impersonated a bail enforcement officer as a ruse to gain entry to a private residence where he and an accomplice brandished a weapon, handcuffed one of the occupants, and searched the premises for a bond violator.

The trial court sentenced defendant to consecutive terms of six years in prison and twelve months in the county jail, but suspended both sentences on the condition that defendant complete ten years of probation. As relevant here, the court imposed a condition of probation prohibiting defendant from working in law enforcement or private police functions, including security, security guard, merchant police, private police, bail bonds, bail bond enforcement, or community patrol.

Subsequently, the probation department filed a complaint seeking revocation of defendant's probation, alleging violation of the "no security work" and certain other conditions. After a hearing, the trial court found, among other things, that defendant had violated the "no security work" condition. It revoked his probation and imposed the previously suspended terms of confinement, and the mittimus imposed costs of prosecution and probation. This appeal followed.

I.

Defendant contends that, because the prosecution failed to prove he violated the terms and conditions of his probation, the court violated his due process rights by revoking his probation. We disagree.

Probation is a privilege, not a right. If a probationer violates any condition of probation, it may be revoked. Whether a probationer has violated a probation condition presents a question of fact. Once the court finds that a violation has occurred, whether probation should be revoked lies within the discretion of the court. *People v. Ickler,* 877 P.2d 863 (Colo.1994); *People v. Colabello,* 948 P.2d 77 (Colo.App.1997); *see* §§ 16–11–205, 16–11–206, C.R.S.2001.

In a revocation proceeding, the prosecution must establish a violation of probation by a preponderance of the evidence, except that the commission of a criminal offense must be established beyond a reasonable doubt. Section 16–11–206(3), C.R.S.2001; Crim. P. 32(f)(3); *see also Strickland v. People,* 197 Colo. 488, 594 P.2d 578 (1979); *People v. Colabello, supra* (no finding of willful or unreasonable failure to comply with condition of

probation is necessary, except with respect to a failure to pay restitution).

## A.

Defendant contends that the court violated his procedural due process rights because he was not given the opportunity to confront and cross-examine witnesses who had personal knowledge of material facts. We disagree.

■ A probationer is entitled to certain procedural due process protections before probation may be revoked. Among these protections is the right to confront and cross-examine witnesses against him at a hearing, except where the hearing officer finds good cause to waive the requirement. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *People v. Atencio,* 186 Colo. 76, 525 P.2d 461 (1974).

■ Here, a probation officer testified concerning the investigation of defendant's probation violations. However, the officer did not testify from personal knowledge with respect to a search of defendant's premises and questioning conducted by a deputy sheriff. In addition, the court did not require, and the prosecution did not offer, an explanation for the failure to call the deputy to testify.

However, even if we assume, without deciding, that the trial court erred in failing to require the prosecution either to produce the witness with personal knowledge or to present good cause to justify the witness's absence, because the trial court relied upon other evidence to find a probation violation, reversal is not required.

In finding that defendant had violated the proscription against working in the security field, the trial court relied primarily upon the testimony of defendant's employer, who stated that he had hired defendant to manage his security company. And, while the employer confirmed that he also operated a limousine business, which was the entity for whom defendant claimed to be working, the employer testified that he employed ten people in his security company and only two in his limousine company and that the limousine business had not yet started. Moreover, the prosecution introduced a business card provided by defendant for the limousine business that listed "executive protection" as one of the services provided by the company.

From this evidence, the court found that defendant was actually working in the proscribed area of security. Because the court's finding is supported by this evidence independent of the probation officer's testimony concerning the deputy's search and questioning, permitting the probation officer to testify about hearsay and events of which she had no personal knowledge was harmless beyond a reasonable doubt. *See Bernal v. People,* 44 P.3d 184 (Colo.2002)(violation of right to confrontation is subject to constitutional harmless error analysis).

## B.

Defendant nevertheless contends that the trial court abused its discretion in revoking probation because the prosecution failed to meet its burden to prove by a preponderance of the evidence that he had violated the "no security work" condition of probation. We disagree.

A finding that a probationer has violated a condition of probation will not be disturbed merely because there is a conflict in the evidence. *People v. Trujillo,* 189 Colo. 206, 539 P.2d 1234 (1975).

■ Here, there was conflicting evidence on the kind of work in which defendant was engaged, including evidence suggesting that he only worked as a limousine driver and was in the process of winding down his own security business within the period previously required by the court. However, because the trial court's findings have record support, we decline to disturb them on appeal.

## C.

Because we conclude the trial court's finding that defendant violated the "no security work" condition was sufficient to justify the revocation of probation, we need not separately address defendant's contentions relating to the violation of other conditions. *See*

*People v. Ickler, supra* (probation revocation may be based on violation of any condition).

## II.

We reject defendant's contention that the trial court abused its discretion in imposing the previously suspended consecutive sentences of six years in prison and twelve months in jail.

On appellate review of a sentence, the decision of the sentencing court must be accorded deference because of that court's familiarity with the circumstances of the case. The trial court has broad discretion when imposing a sentence, and the sentence imposed will not be overturned absent a clear abuse of discretion. In exercising that discretion, a trial court must consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law and the deterrence of crime, and the protection of the public. *People v. Fuller*, 791 P.2d 702 (Colo. 1990); *see also* § 18–1–409(1), C.R.S.2001.

The sentencing court must state on the record the basic reasons for imposing the sentence. If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, an appellate court must uphold the sentence. Only in exceptional cases will an appellate court overturn the trial court's judgment in sentencing matters. *People v. Fuller, supra.*

When an aggravated sentence is imposed, the trial court must make findings on the record to justify variation from the presumptive sentencing range. *People v. Young*, 894 P.2d 19 (Colo.App.1994)(sentence of maximum term of confinement affirmed where trial court properly considered sentencing factors); *People v. Jenkins*, 674 P.2d 981 (Colo.App.1983), *rev'd on other grounds*, 687 P.2d 455 (Colo.1984).

Here, the trial court imposed the maximum sentence for the misdemeanor false imprisonment conviction and the maximum aggravated sentence for felony first degree criminal trespass. In imposing the previously suspended sentence, the trial court emphasized the nature of the crime in which defendant used a false show of authority to terrorize innocent victims. Likewise, the court noted that defendant had sustained a deferred judgment for a similar offense committed in Texas. The deferred judgment provided the basis for the aggravated sentence. *See* § 18–1–105(9.5)(c), C.R.S.2001. Finally, the court found that defendant's conduct and history of misrepresenting himself indicated a substantial likelihood that he would continue to commit similar offenses.

An extended term of confinement is sometimes necessary to protect the public from further criminal activity by the offender and to adequately provide for individual deterrence and correction when the offender's past pattern of conduct indicates that he or she is a danger to society. *See Flower v. People*, 658 P.2d 266 (Colo.1983).

Here, the trial court acted within its discretion when it accorded substantial weight to defendant's pattern of criminal behavior and the likelihood he would commit further crimes that would endanger the public. The court made sufficient findings to exceed the presumptive sentence range.

*People v. Jenkins, supra*, upon which defendant relies, is distinguishable. There, the trial court abused its discretion when it imposed a prison term exceeding the presumptive range without considering that the defendant had not previously been incarcerated and therefore had not been exposed to the rehabilitative and deterrent effects of incarceration. Further, the defendant had not been convicted of any similar offenses, a fact emphasized by the appellate court in reversing the trial court's sentencing decision.

Here, in contrast, while defendant had not been incarcerated before this offense, he had sustained a deferred judgment for a similar offense. This distinction further supports our conclusion that the trial court did not abuse its discretion in sentencing.

## III.

The court's oral pronouncement of sentence made no reference to assessment of costs. After sentencing, the court issued a

mittimus that imposed court costs and costs related to the supervision of defendant's probation. Defendant contends that the trial court violated his rights to due process, to personal presence and counsel, and to be free from double jeopardy when it assessed these costs against him outside his presence and after the pronouncement of his sentence of confinement. We disagree.

■ The Double Jeopardy Clause protects an accused from being twice punished for the same offense. Thus, a trial court is prohibited from increasing a legal sentence once it has been imposed and the defendant has begun serving it. *Righi v. People*, 145 Colo. 457, 359 P.2d 656 (1961); *People v. Reed*, 43 P.3d 644 (Colo.App.2001).

The essential issue is whether the mittimus increased defendant's sentence by imposing costs. Resolution of the question requires us to determine whether the imposition of costs is a form of punishment that makes up a part of the sentence or whether it serves a purpose unrelated to punishment.

■ A second sanction in the form of an assessment that is primarily remedial rather than punitive does not violate principles of double jeopardy. In determining whether a particular sanction subjects a defendant to double jeopardy, the reviewing court applies a two-part test, first considering the authorizing statute to determine if the legislature intended a criminal or civil sanction. Second, even if the statute intends to provide a civil sanction, the sanction violates double jeopardy when the statutory scheme is primarily punitive. *See Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

■ This second part of the test requires consideration of seven factors: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it requires a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; (7) whether it appears excessive in relation to the alternative purpose assigned. *Hudson v. United States, supra; Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *In re Cardwell*, 50 P.3d 897, (Colo.2002); *see People v. Stead*, 66 P.3d 117 (Colo.App.2002).

■ Applying this two-part test to the costs statute, we first conclude that the statute intends a sanction that is essentially civil. When a court imposes court costs in a criminal matter, it renders a civil judgment in favor of the state or the state agency that has incurred the cost. *See* § 16–11–501(1), C.R.S.2001.

Two of the seven *Kennedy* factors militate for a finding that costs are punitive in nature. Imposition of costs generally requires a finding of scienter and is applied to behavior already a crime, because costs are only imposed upon conviction of a criminal offense. *See* § 16–11–501(1). Nevertheless, consideration of the remaining factors leads us to conclude here that costs are not primarily punitive. *See Hudson v. United States, supra* (no one factor is controlling as factors often may point in different directions).

Costs are imposed to reimburse the state for the actual expenses incurred in prosecuting a defendant. *See* § 16–11–501, C.R.S. 2001; *Bd. of County Comm'rs v. Wilson*, 3 Colo.App. 492, 34 P. 265 (1893)(the right to reimbursement for costs is a creature of statute). The costs statute lists numerous items that may be assessed against one convicted of a criminal offense. Each item relates to an expense commonly incurred in the prosecution or incarceration. The assessments are limited to the actual costs incurred by the state or state agency. *Cf. United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)(civil penalty that far exceeds actual damages and expenses may constitute punishment and implicates double jeopardy concerns), *overruled on other grounds by Hudson v. United States, supra*. Accordingly, costs imposed pursuant to the statute are not excessive in relation to the purpose of reimbursement of actual expenses.

Additionally, costs are not traditionally considered to be punishment. *See* Tenn. Code Ann. § 40–24–105(a) (2001)(costs are not part of criminal penalty); Va.Code Ann. § 17.1–600 (Michie 2002)(same); *Strattman v. Studt,* 20 Ohio St.2d 95, 253 N.E.2d 749 (1969); *Symons v. Eichelberger,* 110 Ohio St. 224, 144 N.E. 279 (1924); *State ex rel. Canterbury v. Paul,* 205 W.Va. 665, 520 S.E.2d 662 (1999). An assessment of costs also is not an affirmative disability or restraint like imprisonment. *See In re Cardwell, supra.*

Likewise, the imposition of costs does not serve the goals of retribution and deterrence. *Cf. People v. Stead,* 845 P.2d 1156 (Colo. 1993)(drug offender surcharge considered punishment because it serves goals of retribution, rehabilitation, and deterrence). The statutes concerning costs reveal no intent to advance purposes related to sentencing. To the contrary, the assessment of costs is a separate action from the imposition of sentence. *See* Crim.P. 32(c) (judgment of conviction consists of both the sentence and any cost award); *People v. Fisher,* 189 Colo. 297, 539 P.2d 1258 (1975)(court's sua sponte imposition of costs is not a change to the sentencing concessions made in a plea agreement).

*People v. Shepard,* 989 P.2d 183 (Colo. App.1999), in which a division of this court held that increasing a restitution award after initial sentencing violates double jeopardy principles, is distinguishable. The *Shepard* division concluded that, while restitution provides compensation for incurred expenses, it is primarily considered part of a criminal sentence because it advances the rehabilitative and deterrent purposes of sentencing. *See also People v. Milne,* 690 P.2d 829 (Colo. 1984). These purposes are explicitly stated in the restitution statute. *See* § 16–18.5–101(1)(c), (d), C.R.S.2001.

 The better practice is to impose the specific amount of costs on the date of sentencing. *See People v. Fisher, supra.* However, because costs constitute primarily a civil sanction that is not part of a criminal sentence, the trial court's assessment of costs following the oral pronouncement of defendant's sentence here did not violate principles of double jeopardy. *See State ex rel. Canterbury v. Paul, supra* (because costs are not punishment or part of the penalty for committing a crime, double jeopardy protections do not apply).

Based on our conclusion that the assessment of costs is not part of a criminal sentence, we also reject defendant's related contentions that their assessment violated his right to procedural due process and his right to be present and to have counsel present at every critical stage of his case.

IV.

Defendant asserts, the People agree, and we concur that the mittimus miscalculated costs, charging defendant for expenses of probation supervision based on the ten-year probationary period originally imposed, rather than the period that he actually served before the revocation. Accordingly, we direct the trial court on remand to recalculate the costs of probation supervision and to assess defendant only for the period of probation actually served. *See* § 16–11–204(2)(a)(V), C.R.S.2001.

The order is reversed as to the amount of costs assessed, and the case is remanded to the trial court for recalculation of costs and the issuance of an amended mittimus. In all other respects, the order is affirmed.

Judge METZGER and Judge WEBB concur.